COOK, Appellee,

v.

TOLEDO HOSPITAL, Appellant, et al.;

Cook, Appellant,

v.

Toledo Hospital et al., Appellees.

[Cite as *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

Nos. L–05–1373 and L–06–1097.

Decided Oct. 6, 2006.

182

Jay Harris, for Joseph Cook.

James F. Nooney, for Robert E. Rawitscher, M.D., Timothy McCoy, Beth L. Katynski, David K. Epperson, M.D., and Cynthia A. Peiffer.

Kristen A. Connelly and Nancy D. Moody, for Toledo Hospital, M. Smith, R.N., E. Lybarger, R.N., C. Culp, R.N., N. Benner III, C.S.T., T. Shrewsberry, S. Nolan, R.N., M. Parlette, R.R.T., P. Burdick, R.N., Kevin Fleming, and E. Cowell, R.N.

---

Glasser, Judge.

{¶ 1} This is a consolidated appeal from two judgments of the Lucas County Court of Common Pleas. The first appeal is by defendant-appellant, the Toledo Hospital, from the trial court's order that the hospital produce a number of patient-care incident reports. The second appeal is by plaintiff-appellant, Joseph Cook, from the trial court's denial of his motion for an extension of time and from entries of summary judgment in favor of defendants-appellees, Toledo Hospital, M. Smith, R.N., E. Lybarger, R.N., C. Culp, R.N., N. Benner III, C.S.T., T. Shrewsberry, S. Nolan, R.N., M. Parlette, R.R.T., P. Burdick, R.N., Kevin Fleming, and D. Cowell, R.N. ("the Toledo Hospital defendants"), and in favor of defendants-appellees, Robert E. Rawitscher, M.D., Timothy McCoy, Beth L. Katynski, David K. Epperson, M.D., and Cynthia Peiffer ("the Rawitscher defendants"). For all of the following reasons, we reverse the order to produce patient-care incident reports, and affirm the entries of summary judgment.

{¶ 2} This medical-malpractice action arises out of an open-heart surgery that was performed on Cook at the Toledo Hospital on May 20, 2003. In the complaint, filed on May 18, 2004, Cook alleged that while he "was unconscious under the care, protection and control of the defendants," he "was burned on his back and arm" and that "[d]efendants are legally responsible for the injuries, losses and damages suffered * * * pursuant to the legal doctrine of *Res Ipsa Loquitur*."

{¶ 3} On the same date that the complaint was filed, Cook propounded certain discovery requests upon the all of the defendants. Among these requests was a request for the production of all memos, reports, incident reports, or other documents "concerning all patients burned in The Toledo Hospital." The hospital objected to this request.

{¶ 4} On March 18, 2005, Cook filed a motion to compel production of the above-mentioned documents along with other disputed discovery. The hospital opposed this motion, and on June 16, 2005, the trial court held a hearing on the matter. As a result of that hearing, on June 22, 2005, the trial court ordered the

hospital to respond to certain discovery requests and to produce for in camera inspection certain patient-care incident reports relating to patients at the hospital who had experienced burns while in surgery.

{¶ 5} In compliance with the order, the hospital produced a number of documents. Following the trial court's in camera inspection, the hospital was ordered to produce to Cook nine patient-care incident reports, including incident reports not relating to Cook. On November 30, 2005, the hospital timely appealed from this order.

{¶ 6} At the same time that discovery matters were being litigated, both the Rawitscher defendants and the Toledo Hospital defendants filed motions for summary judgment. The Rawitscher defendants filed their motion for summary judgment on February 4, 2005. Filed with this motion were affidavits by defendants Rawitscher and Epperson that relevantly stated that "burns of the type and location of those discovered on Mr. Cook's left arm and back the day following the surgery can and do occur without and in the absence of any negligence in the performance of surgical and/or anesthesia services."

{¶ 7} At the initial pretrial conference, held on July 7, 2005, the trial court ordered that Cook identify by November 4, 2005, all expert witnesses he intended to call at trial. Not only did Cook fail to name an expert witness by this deadline, at no time during the pendency of his claims did he ever name an expert witness.

{¶ 8} On November 9, 2005, the Rawitscher defendants filed a motion in limine to preclude expert-witness testimony from plaintiff and a request for an immediate ruling on their previously filed motion for summary judgment. The Toledo Hospital defendants filed their motion for summary judgment a few days later, on November 14, 2005. The Toledo Hospital defendants argued that summary judgment should be entered in their favor because, without expert witness testimony, Cook was unable to establish a prima facie case of negligence against them—regardless of his reliance on the doctrine of res ipsa loquitur.

{¶ 9} On November 23, 2005, Cook filed a motion to extend case dates. By order dated December 16, 2005, the trial court denied Cook's motion and granted him leave until January 13, 2006, to file his memoranda in opposition to the pending motions for summary judgment.

{¶ 10} Cook ignored the January 13, 2006 deadline, and on January 27, 2006, he filed a motion for an extension of time to respond to the motions for summary judgment. Cook argued that he needed additional time to respond to the motions because the trial court's order requiring the hospital to produce patient-care incident reports was currently on appeal. Cook's motion was opposed by all of the defendants.

{¶ 11} On February 27, 2006, the trial court denied Cook's motion for an extension of time, finding that Cook had been given more than adequate time to file oppositions to the motions for summary judgment and had still failed to respond. On the same day, the trial court granted defendants' motions for summary judgment. In both cases, summary judgment was based on the trial court's finding that Cook, in failing to produce expert witness testimony to demonstrate that the standard of care had been breached in this case, failed to establish all of the elements of his medical-negligence claim. Cook timely appealed all three of the trial court's rulings.

{¶ 12} The Toledo Hospital, in its appeal, raises the following sole assignment of error:

{¶ 13} I. "The trial court erred when it ordered the production of statutorily protected patient care incident reports."

{¶ 14} Cook, in his appeal, asserts three assignments of error. They are as follows:

{¶ 15} I. "The trial court erred in denying plaintiff-appellant's motion for extension of time to oppose the defendants' motions for summary judgment until at least the court of appeals had decided the discovery order issue on appeal and had remanded the case back to the trial court."

{¶ 16} II. "The trial court erred in granting defendants' motions for summary judgment where discovery was still continuing and necessary before plaintiff would be able to oppose the defendants' motions for summary judgment."

{¶ 17} III. "The trial court erred in granting defendants' motions for summary judgment where plaintiff alleged that his burns were suffered while he was rendered unconscious under general anesthesia and the court record shows that plaintiff's affidavit was on file with the court as well as the hospital discharge summary that noted 'multiple burns' were suffered by Joseph Cook while in the hospital, which burns were not present in the admission history and physical examination. The trial court should have denied the defendants' motions for summary judgment based on the legal doctrine of *res ipsa loquitur*."

{¶ 18} We begin with an examination of the Toledo Hospital's appeal and the attendant assignment of error, wherein it is argued that it was error for the trial court to have ordered the production of statutorily protected patient-care incident reports.

{¶ 19} We note at the outset that an appellate court reviewing a trial court's discovery order generally does so under an abuse-of-discretion standard; but when the trial court's order contains an error of law in misconstruing or misapplying the law, then the appellate court reviews the matter de novo.

*Quinton v. MedCentral Health Sys.*, 5th Dist. No. 2006CA0009, 2006-Ohio-4238, 2006 WL 2349548, at ¶ 13. The issue of the confidentiality of incident reports pursuant to R.C. 2305.253 is one of law. *Id.* Accordingly, we will review the matter de novo.

{¶ 20} As indicated above, among Cook's discovery requests was a request for the production of all memos, reports, incident reports, or other documents "concerning all patients burned in The Toledo Hospital." The hospital objected to this request, asserting, among other things, that incident reports are privileged and protected from discovery pursuant to R.C. 2305.24 and 2305.253.[1]

{¶ 21} Following the hearing on Cook's motion to compel production of the disputed documents, the trial court ordered the hospital to provide to the court for in camera inspection "all incidents about which that it may have any knowledge concerning patients suffering burns that occurred in any surgical suite from any surgical procedures in the previous ten (10) years." Pursuant to the inspection, the court ordered that parts of the submitted discovery—in particular, nine specific "reports/incidents"—be provided to Cook.[2] It is these documents that are the subject of the Toledo Hospital's appeal.

{¶ 22} R.C. 2305.253 addresses the confidentiality of incident and risk-management reports and provides as follows:

{¶ 23} "(A) Notwithstanding any contrary provision of section 149.43, 1751.21, 2305.24, 2305.25, 2305.251, 2305.252, or 2305.28 of the Revised Code, an incident report or risk management report and the contents of an incident report or risk management report are not subject to discovery in, and are not admissible in evidence in the trial of, a tort action." The privilege granted by this section "specifically targets documents that report an incident involving injury or potential injury suffered by a patient while receiving medical care by a health care provider. If this type of document is prepared by—or for the use of—a peer review committee, it is to be confidential and not subject to discovery." *Doe v. Mt. Carmel Health Sys.*, Franklin App. No. 05AP–435, 2005-Ohio-6966, 2005 WL 3547970, at ¶ 18; see, also, *Quinton v. MedCentral Health Sys.*, supra, at ¶ 15.

---

1. As Cook points out, the hospital initially cited R.C. 2305.251 (dealing with peer-review-committee immunity) as the basis for its objection. However, in a subsequent trial court filing, the hospital corrected itself, identifying the initial citation as erroneous and the result of a typographical error.

2. Although the trial court ordered the production of evidence concerning events that had taken place in the previous ten years, an affidavit by William Quinlan, Risk Manager for the Toledo Hospital, indicated that the documents produced in response to the court's order "represent a search of patient incident reports dating back to late 1999."

{¶ 24} The term "incident report," or "risk management report," is defined, at R.C. 2305.25, as "a report of an incident involving injury or potential injury to a patient as a result of patient care provided by health care providers, including both individuals who provide health care and entities that provide health care, that is prepared by or for the use of a peer review committee of a health care entity and is within the scope of the functions of that committee."

{¶ 25} "Peer review committee" is defined, at R.C. 2305.25(E)(1), as "a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:

{¶ 26} "(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

{¶ 27} "(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions."

{¶ 28} The burden is upon the party asserting the privilege set forth at R.C. 2305.253 to establish that the privilege is applicable. *Quinton v. MedCentral,* supra. Here, the hospital points to uncontroverted evidence that the documents the trial court ordered to be produced to Cook—documents that were among those specifically requested by Cook and that were provided in response to the trial court's express order—were, by definition, patient-care incident reports. As such, they were clearly privileged under R.C. 2305.253.

{¶ 29} R.C. 2305.252, which addresses the confidentiality of peer-review-committee proceedings and records, additionally provides:

{¶ 30} "Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider * * * arising out of matters that are the subject of evaluation and review by the peer review committee. * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. * * *."

{¶ 31} By this language, R.C. 2305.252 "manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the

course of a peer review committee's proceedings." *Tenan v. Huston,* 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549, at ¶ 23. Although the language of the statute permits a party to obtain information used by a peer review committee if that information was generated from another original source, that information must be obtained from that source, and not from the records of the committee's proceedings. Id.

{¶ 32} For all of the foregoing reasons, we find that the patient-care incident reports that are the subject of this appeal are confidential and not discoverable. Accordingly, the Toledo Hospital's assignment of error is found well taken.

{¶ 33} We next examine the merits of Cook's appeal from the denial of his motion for an extension of time and from the entries of summary judgment in favor of defendants. Cook argues in his first assignment of error that the trial court erred in denying his motion for an extension of time to file oppositions to defendants' motions for summary judgment. According to Cook, there are essentially two reasons why the extension should have been granted pending this court's decision in the appeal of the discovery order: (1) the trial court was without jurisdiction to rule on the motions for summary judgment as long as the discovery matter was on appeal and (2) summary judgment was inappropriately granted while discovery was ongoing.

{¶ 34} He argues in his second assignment of error that the trial court erred in granting defendants' motions for summary judgment when discovery was both continuing and necessary in order for him to prepare an opposition to the defendants' motions for summary judgment.

{¶ 35} In his third assignment of error, Cook argues that the motions for summary judgment should not have been granted because under the doctrine of res ipsa loquitur, genuine issues of material fact remained.

{¶ 36} Because the assignments of error present common issues of fact and law, they will be considered together in this analysis.

{¶ 37} Regarding the question of the trial court's jurisdiction to rule on the motions for summary judgment while the discovery matter was on appeal, we look to *In re S.J.,* 106 Ohio St.3d 11, 2005-Ohio-3215, 829 N.E.2d 1207, which states:

{¶ 38} "An appeal is perfected upon the filing of a written notice of appeal. R.C. 2505.04. Once a case has been appealed, the trial court loses jurisdiction except to take action in aid of the appeal. *State ex rel. Special Prosecutors v. Judges, Court of Common Pleas* (1978), 55 Ohio St.2d 94, 97, 9 O.O.3d 88, 378 N.E.2d 162. The trial court retains jurisdiction over issues not inconsistent with the appellate court's jurisdiction to reverse, modify, or affirm

the judgment appealed from. Id.; *Yee v. Erie Cty. Sheriff's Dept.* (1990), 51 Ohio St.3d 43, 44, 553 N.E.2d 1354."

{¶ 39} In the instant case, the issue involved in the initial appeal was whether patient-care incident reports of nonparty patients who suffered burns while in the operating room were discoverable. The motions for summary judgment, on the other hand, dealt with the distinctly unrelated issue of whether Cook was required to present expert testimony to demonstrate that his injury would not have occurred in the absence of negligence. Because the issue that was involved in the motions for summary judgment was in no way inconsistent with this court's jurisdiction to reverse, modify, or affirm the discovery order that was appealed, we find that the trial court retained jurisdiction to determine the motions for summary judgment.

{¶ 40} We now examine Cook's claim that the trial court erred in denying his motion for an extension of time and in granting the defendants' motions for summary judgment when discovery was still continuing and, to Cook's mind, necessary before he would be able to prepare an effective opposition to the motions for summary judgment.

{¶ 41} A trial court's decision to grant or deny an extension of time will not be disturbed absent an abuse of discretion. Civ.R. 6(B); *Vilardo v. Sheets,* 12th Dist. No. CA2005–09–091, 2005-Ohio-3473, 2006 WL 1843585, at ¶ 28. An abuse of discretion connotes that the court's decision was unreasonable, arbitrary, or unconscionable, and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 450 N.E.2d 1140.

{¶ 42} Civ.R. 56(F) permits a party opposing summary judgment to seek a continuance to pursue further discovery in order to develop its opposition to the motion. Under this provision, the opposing party must submit an affidavit stating the reasons justifying an extension. "Mere allegations requesting a continuance or deferral of action for the purpose of discovery are not sufficient reasons why a party cannot present affidavits in opposition to the motion for summary judgment. There must be a factual basis stated and reasons given why it cannot present facts essential to its opposition to the motion." *Gates Mills Invest. Co. v. Pepper Pike* (1978), 59 Ohio App.2d 155, 169, 13 O.O.3d 191, 392 N.E.2d 1316. When no affidavit is presented in support of a motion for extension under Civ.R. 56(F), a court may not grant an extension pursuant thereto. *Vilardo* at ¶ 29.

{¶ 43} In the instant case, although Cook mentioned in his motion that he needed additional time to respond to the motions for summary judgment because the trial court's order requiring production of the patient-care incident reports

was on appeal, he failed to explain why the disputed discovery was necessary in order to formulate his opposition. As indicated above, Cook did not, in fact, need that discovery in order to oppose defendants' motions. In addition, Cook failed to provide an affidavit in support of his motion. Therefore, the motion was not in compliance with Civ.R. 56(F) and was properly denied on this basis alone.

{¶ 44} Upon review of the circumstances surrounding the request for an extension, we note that Cook's motion was filed more than two months after the Toledo Hospital defendants' motion for summary judgment was filed and nearly a year after the Rawitscher defendants' motion was filed. The issue of the need for expert testimony in this case should have come as no surprise to Cook. The Rawitscher defendants raised it generally in their early-filed motion for summary judgment. The Toledo Hospital defendants, in their later-filed motion, also raised the issue, but with greater specificity. They argued that in this case, expert testimony was necessary as a prerequisite to the application of the doctrine of res ipsa loquitur. Rather than addressing the matter, Cook clung to the notion that expert testimony would not be required. He ignored both the trial court's order to identify experts by November 4, 2005, and the order to respond to the defendants' motions for summary judgment by January 13, 2006. Under these circumstances, we cannot say that the trial court abused its discretion in denying Cook's request for more time.

{¶ 45} Finally, we consider Cook's argument that summary judgment was improperly granted to defendants when the doctrine of res ipsa loquitur had been invoked as a theory of relief. Specifically, Cook argues that the trial court erred in determining that he was required to produce expert testimony in support of his claims.

{¶ 46} An appellate court reviewing a trial court's granting of summary judgment does so de novo, applying the same standard used by the trial court. *Grafton v. Ohio Edison Co.* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Civ.R. 56(C) provides:

{¶ 47} "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. * * *"

{¶ 48} Summary judgment is proper where: (1) no genuine issue of material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) when the evidence is viewed most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion, a conclusion

adverse to the nonmoving party. *Ryberg v. Allstate Ins. Co.* (July 12, 2001), 10th Dist. No. 00AP–1243, 2001 WL 777121, citing *Tokles & Son, Inc. v. Midwestern Indemn. Co.* (1992), 65 Ohio St.3d 621, 629, 605 N.E.2d 936.

{¶ 49} The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to an essential element of one or more of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. Once this burden has been satisfied, the nonmoving party has the burden, as set forth at Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. Id.

{¶ 50} The doctrine of res ipsa loquitur is a rule of evidence that allows the trier of fact to draw an inference of negligence from the facts presented. *Johnson v. Hammond* (1988), 47 Ohio App.3d 125, 127, 547 N.E.2d 1004; *Cunningham v. Children's Hosp.*, 10th Dist. No. 05AP–69, 2005-Ohio-4284, 2005 WL 1983374, at ¶ 25. "To warrant application of the rule a plaintiff must adduce evidence in support of two conclusions: (1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and (2) that the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." *Hake v. Wiedemann Brewing Co.* (1970), 23 Ohio St.2d 65, 66, 52 O.O.2d 366, 262 N.E.2d 703. Whether sufficient evidence exists to warrant the application of *res ipsa loquitur* is for the court's determination, as a matter of law. *Becker v. Lake Cty. Mem. Hosp. W.* (1990), 53 Ohio St.3d 202, 203, 560 N.E.2d 165.

{¶ 51} Although the doctrine can be applied in medical-malpractice actions, it generally does not obviate the requirement that a plaintiff provide expert testimony on the applicable standard of care. *Johnson,* 47 Ohio App.3d at 128, 547 N.E.2d 1004; *Marcum v. Holzer Clinic, Inc.,* 4th Dist. No. 03CA25, 2004-Ohio-4124, 2004 WL 1753367, at ¶ 34. Unless the negligence is apparent to laypersons, the plaintiff must present expert medical testimony to show that in the ordinary course of events the injury complained of would not have occurred if ordinary care had been observed. *Marcum,* citing *Anderson v. Motta* (1991), 73 Ohio App.3d 1, 3, 595 N.E.2d 1029. "The doctrine is not applicable in malpractice actions in which its claimed applicability is based solely upon the fact that treatment was unsuccessful or terminated with poor or unfortunate results." *Johnson,* 47 Ohio App.3d at 127, 547 N.E.2d 1004.

{¶ 52} The facts relevant to the instant determination are as follows. On May 20, 2003, Cook was taken into an operating room at the Toledo Hospital, where he

was scheduled to undergo open-heart quadruple myocardial revascularization and mitral valve repair surgery. He was given a general anesthetic and rendered unconscious. Dr. Rawitscher, with the assistance of Timothy McCoy and Beth L. Katynski, performed the surgery. Dr. Epperson, with the assistance of Cynthia A. Peiffer, provided the anesthesia services. Although the course of the surgery and anesthesia were uneventful and without complication, during the early morning hours of the day following the surgery, areas of sloughing and exposed raw skin were noted on Cook's left back and arm. According to Cook, he experienced pain in those areas upon awakening from the anesthesia and the nurses at the Toledo Hospital treated those areas for burns.

{¶ 53} It is our conclusion that it is not within the knowledge or experience of laypersons to be able to conclude that Cook's left back and arm injuries could have occurred only if someone involved in his surgery had been negligent. Thus, it was incumbent upon Cook to present expert testimony in support of his contention that his left back and arm injuries would not have occurred if ordinary care had been observed by defendants in the operating room. Absent such expert testimony, Cook's attempt to rely on res ipsa loquitur must fail as a matter of law.

{¶ 54} Even though neither Dr. Rawitscher nor Dr. Epperson knows the cause of the injuries on Cook's left back and arm, they each testified by affidavit that to a reasonable degree of medical certainty, they were not caused by or in any way related to the surgical or anesthesia services provided to Cook by them or by any other named defendant under their direction and supervision. In addition, both Drs. Rawitscher and Epperson stated that to a reasonable degree of medical certainty, areas of sloughing and exposed raw skin of the type and location of those discovered on Cook's left arm and back the day following the surgery can and do occur without and in the absence of any negligence in the performance of surgical and/or anesthesia services.

{¶ 55} Because defendants-appellees met their initial burden under Civ.R. 56 and Cook failed to come forward with competent evidence demonstrating a genuine issue of material fact for trial, we conclude that the trial court properly granted summary judgment in defendants-appellees' favor. For all of the foregoing reasons, Cook's first, second, and third assignments of error are found not well taken.

{¶ 56} The judgments granting summary judgment in favor of defendants-appellees are hereby affirmed, and the judgment ordering production of patient-care incident reports—although effectively moot in light of our determination regarding the motions for summary judgment—is hereby reversed. Joseph Cook is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for

the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed in part<br>and reversed in part.

PIETRYKOWSKI and SINGER, JJ., concur.

GEORGE M. GLASSER, J. retired, of the Sixth Appellate District, sitting by assignment.