[Cite as *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| Kelsie Cousino, etc., et al. | Court of Appeals No. L-17-1218 |
| Appellees | Trial Court No. CI0201603866 |
| v. | |
| Mercy St. Vincent Medical Center | **DECISION AND JUDGMENT** |
| Appellant | Decided: April 20, 2018 |

* * * * *

Chad M. Tuschman and Peter O. DeClark, for appellees.

Jean Ann S. Sieler, Kayla L. Henderson and James E. Brazeau,
for appellant.

* * * * *

**MAYLE, P.J.**

**{¶ 1}** This case comes before this court as an accelerated appeal. Defendant-appellant Mercy St. Vincent Medical Center appeals the August 17, 2017 judgment of the Lucas County Court of Common Pleas, which granted the plaintiffs' motion to compel, in part, and ordered Mercy St. Vincent to produce "any documents responsive to plaintiffs'

request for production Nos. 1, 4, 5, 7, 8, 10, 13, 14, 16, 19, 20, 21, 22, 23, 24, and 25." For the following reasons, we reverse the trial court's order, in part, and remand for further proceedings consistent with this decision.

**Background**

{¶ 2} On March 3, 2014, plaintiffs-appellees Kelsie Cousino, a minor, by and through her mother and next friend Jackie Cousino, and Kelsie's parents, Andy and Jackie Cousino, filed an action against Mercy St. Vincent, Dr. Fouad Butto, M.D., Catholic Health Partners, ProMedica Health System, Inc., ProMedica Physician Group, Inc., ProMedica Central Physicians LLC, and Toledo Children's Heart Center, alleging that defendants were liable for injuries sustained by Kelsie Cousino when Dr. Butto, a pediatric cardiologist, performed a cardiac catheterization on her at Mercy St. Vincent on November 15, 2012. The Cousinos eventually settled their medical malpractice claim against Dr. Butto, and dismissed the case.

{¶ 3} A few months later, on August 15, 2016, the Cousinos refiled their action against a single defendant, Mercy St. Vincent, alleging that it negligently credentialed Dr. Butto (first count), that its actions constituted gross negligence and/or willful or wanton misconduct (second count), and that Andy and Jackie Cousino suffered loss of consortium due to their daughter Kelsie's injuries (third count).

{¶ 4} The Cousinos served a first set of requests for production of documents with their complaint. In its written response, Mercy St. Vincent objected to many of the requests on several grounds, including that the requests seek information that is protected

2.

by Ohio's peer review privilege (R.C. 2305.252 and 2305.253), the attorney-client privilege, and work product doctrine. On November 7, 2016, plaintiffs filed a motion to compel and for sanctions. Mercy St. Vincent opposed plaintiffs' motion on December 7, 2016, and filed two separate affidavits in support of its privilege claims.

{¶ 5} Mercy St. Vincent submitted an affidavit from Charla Ulrich, Director of Quality and Infection Control at Mercy St. Vincent, in which she provided the following testimony relevant to this appeal:

6. MSVMC[1] has a peer review process which involves several committees that conduct, among other things, credentialing, quality assurance and performance improvement activities for MSVMC. Their activities are confidential.

7. MSVMC has a medical staff peer review committee that consists of actively practicing physicians and their staff which conducts quality assurance and performance improvement activities.

8. MSVMC has a separate credentialing committee and a Medical Executive Committee which conducts credentialing activities of providers.

9. Documents generated by a peer review committee or the credentials committee are placed in each physician's file, kept at the hospital.

---

[1] Ulrich refers to Mercy St. Vincent as "MCVMC" in her affidavit.

10. The credentialing file of Fouad Butto, M.D. consists entirely of documents generated by and created solely for use by the credentials committee, the Medical Executive Committee, and the Board of Directors in their review of his professional qualifications.

11. Depending upon the severity of the injury or potential injury to a patient from care he or she received while at MSVMC, one or more of the committees in MSVMC's peer review process will view any resulting incident report: (a) individually for quality assurance and performance improvement purposes; and/or (b) collectively with other reports prepared over a period of time for purposes of identifying quality and performance trends and issues.* * *

{¶ 6} Mercy St. Vincent also submitted an affidavit from Denise Fowler, its Risk Manager, in which she testified that:

1. Incident reports and 'liability prevention activities'[2] are part of the hospital's peer review and quality process improvement and any related records are created for the purpose of quality improvement.

---

[2] "Liability prevention activities" is a term used by plaintiffs in request No. 24. In a footnote, Fowler testified that Mercy St. Vincent "does not use this term. However, any activities to improve processes which would by their nature prevent liability would fall under the quality improvement processes and peer review."

2. Activities and documents related to claims reviews and risk management are undertaken or prepared in anticipation of litigation under the direction of risk management, legal counsel and/or general counsel.

**{¶ 7}** On August 16, 2017, the trial court entered judgment on plaintiffs' motion to compel.[3] The trial court found that Mercy St. Vincent established the existence of a committee that meets the statutory definition of "peer review committee" under R.C. 2305.25(E) and that "any responsive documents within these requests that are created exclusively by and/or for the use of the peer review committees are privileged * * *." The trial court went on to conclude, however, that "defendant may also have responsive documents that originally were either created or used by the hospital for other purposes." That is, while the trial court recognized that Mercy St. Vincent "provided evidence that Dr. Butto's credentialing file consists exclusively of documents created by and solely for the use of the credentials committee, the Medical Executive Committee, and the board of directors, defendant has not presented any evidence that there is not a personnel file or other responsive documents outside of the credentialing file."

**{¶ 8}** Ultimately, the trial court denied the Cousinos' motion to compel with respect to requests for production Nos. 2, 3, 6, 9, 15, 17, and 18, but granted the motion

---

[3] In its judgment entry, the trial court also ruled on Mercy St. Vincent's motion for judgment on the pleadings, and ordered the Cousinos to file an affidavit of merit that complies with Civ.R. 10(D)(2) within 60 days from the date of the order. That portion of the judgment entry is not on appeal.

5.

with respect to requests for production Nos. 1, 4, 5, 7, 8, 10, 13, 14, 16, 19, 20, 21, 22, 23, 24, and 25, finding that Mercy St. Vincent "has not established that the list of documents responsive to these requests contain only documents created exclusively for the use of the peer review committees and not for other purposes within the hospital." The trial court also found that with respect to requests for production Nos. 23 and 24, Mercy St. Vincent failed to meet its burden of showing that the requested information is protected by either the attorney-client privilege or work product doctrine.

{¶ 9} The court then ordered Mercy St. Vincent to produce "any documents responsive to" the following requests within 14 days:

1. The entire personnel file for Fouad Butto, M.D. from Defendant.

4. Any and all documentation regarding any suspension, revocation, or halting of privileges of Fouad Butto, M.D.

5. All documentation regarding the granting or continuing of staff privileges of Fouad Butto, M.D.

7. Any and all information as to why Fouad Butto, M.D. no longer had privileges to perform cardiac catheterizations as of October 2015.

8. Any and all written information as to the suspension of any privileges prior to October 2015 regarding Fouad Butto, M.D.

10. Any and all information provided by ProMedica Toledo Hospital regarding any incidents of misconduct, suspension of privileges, granting of privileges, or the complication rate involving any and all

6.

patients of Fouad Butto, M.D. at any time during his employment at ProMedica Toledo Hospital.

13. Any and all correspondence and/or communication between Mercy St. Vincent Medical Center and ProMedica Toledo Hospital in any way discussing Fouad Butto, M.D. and the granting of privileges and/or care and treatment involving patients at ProMedica Toledo Hospital and/or Mercy St. Vincent Medical Center from 2005 through to 2015.

14. A listing of all privileges Fouad Butto, M.D. was able to perform at Mercy St. Vincent Medical Center from 2005 to 2015.

16. A listing of all reprimands and/or loss of privileges of Fouad Butto, M.D. at Defendant, Mercy St. Vincent Medical Center, for any reason, including but not limited to any corrective action taken by Defendant, Mercy St. Vincent Medical Center, against Fouad Butto, M.D. at any time.

19. A listing of all periodic reappraisals for reappointment, clinical privileges or specified services, or the loss thereof involving Fouad Butto, M.D., in any way, at Defendant, Mercy St. Vincent Medical Center, from 2005 to 2015.

20. A listing of all applications for appointment, clinical privileges or specialized services by Fouad Butto, M.D. at Defendant, Mercy St. Vincent Medical Center, from 2005 through to 2015.

7.

21. A listing of all corrective or disciplinary actions taken against Fouad Butto, M.D. by Defendant, Mercy St. Vincent Medical Center, from 2005 through to 2015.

22. A listing of all hearing and/or appellate reviews taken against Fouad Butto, M.D. by Defendant, Mercy St. Vincent Medical Center, from 2005 through to 2015.

23. A listing of all claims reviews of any cases, by and on behalf of Mercy St. Vincent Medical Center, in regard to questionable care and/or treatment by Fouad Butto, M.D. from 2005 through to 2015.

24. A listing of all risk management and/or liability prevention activities taken by Defendant, Mercy St. Vincent Medical Center, against Fouad Butto, M.D. from 2005 through to 2015.

25. A listing of all Defendant Mercy St. Vincent Medical Center, department, section or staff activities related to any monitoring of Fouad Butto, M.D. in regard to maintaining quality and efficient patient care and appropriate professional conduct from 2005 through to 2015.

{¶ 10} Mercy St. Vincent appealed that portion of the trial court's judgment entry that ordered it to produce "any documents" in response to these requests, arguing that the broad order compels production of documents protected by the peer review privilege and attorney-client privilege. It assigns a single assignment of error:

8.

THE TRIAL COURT ERRED IN GRANTING PLAINTIFFS'
MOTION TO COMPEL AND ORDERING MERCY ST. VINCENT
MEDICAL CENTER TO PRODUCE CONFIDENTIAL AND
PRIVILEGED DOCUMENTS.

**Law and Analysis**

{¶ 11} Mercy St. Vincent argues that the trial court erred when it ordered Mercy St. Vincent to produce "any documents" responsive to requests for production Nos. 1, 4, 5, 7, 8, 10, 13, 14, 16, 19, 20, 21, 22, 23, 24, and 25 because at least some responsive documents are confidential and privileged under (1) Ohio's peer review privilege, R.C. 2305.252 and 2305.253, and (2) the attorney-client privilege. And although not specifically assigned as error, Mercy St. Vincent also argues that the trial court erred by ordering the production of responsive documents beyond the date of injury, November 12, 2012.

{¶ 12} As a preliminary matter, Article IV, Section 3(B)(2) of the Ohio Constitution limits this court's jurisdiction to the review of "judgments or final orders of the [trial] courts." A trial court's discovery orders are generally interlocutory and, therefore, not immediately appealable. *Mezatasta v. Enter. Hill Farm*, 6th Dist. Erie No. E-15-037, 2016-Ohio-3371, ¶ 16. A judgment that compels the production of documents or information that is alleged to be protected by the peer review privilege is, however, a final order and therefore immediately appealable. R.C. 2305.252 ("An order by a court to produce for discovery or for use at trial the proceedings or records described in this

9.

section is a final order.").   Similarly, the Supreme Court of Ohio has recognized that a "[a]n order compelling the production of materials alleged to be protected by the attorney-client privilege is a final, appealable order under R.C. 2505.02(B)(4)." *Burnham v. Cleveland Clinic*, 151 Ohio St.3d 356, 2016-Ohio-8000, 89 N.E.3d 536, ¶ 30. Moreover, "whether the information sought is confidential and privileged from disclosure is a question of law that is reviewed de novo." *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237, ¶ 13.

{¶ 13} But to the extent that Mercy St. Vincent challenges the trial court's order because the requests require the production of documents through 2015, which it argues would encompass "not relevant subsequent events, as the care at issue occurred in 2012," that is an interlocutory ruling and, in any event, that issue has not been assigned as error. "Although [the appellate court] must consider arguments in support of * * * formal assignments of error, [the appellate court] need not address arguments that are not relevant to the assignments of error or that attempt to raise additional errors." *State v. Bloomfield*, 4th Dist. Lawrence No. 14CA3, 2015-Ohio-1082, ¶ 18.  Thus, we limit our review to Mercy St. Vincent's assignment of error, which is focused on the protected nature of the requested discovery under Ohio's peer review privilege and the attorney-client privilege.

**Ohio's Peer Review Privilege**

{¶ 14} Ohio's peer review privilege, R.C. 2305.252(A), provides:

Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee. * * * Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. * * *

{¶ 15} The purpose of this statute is to protect the integrity and confidentiality of the peer review process so that health care entities have the freedom to meaningfully review and critique—and thereby improve—the overall quality of the healthcare services they provide. *Smith v. Cleveland Clinic*, 197 Ohio App.3d, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 11 (8th Dist.). The privilege provides absolute confidentiality to the peer review process, "the absence of which would make participants reluctant to engage in an honest

criticism for fear of loss of referrals, loss of reputation, retaliation, and vulnerability to tort actions." *Stewart v. Vivian*, 12th Dist. Clermont No. CA2011-06-050, 2012-Ohio-228, ¶ 25.

{¶ 16} The party resisting discovery under a claim of peer review privilege has a two-part burden of establishing that the privilege applies to the requested information. *Smith* at ¶ 9; *Bansal v. Mount Carmel Health Sys.*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 14. First, the health care entity must establish the existence of a "peer review committee" as defined by R.C. 2305.25(E). *Id.* at ¶ 15; *Smith* at ¶ 15. Second, the health care entity must prove that each of the documents that it refuses to produce is a "record within the scope of [that] peer review committee" as required by R.C. 2305.252. *Id.* "In an attempt to meet this burden, the health care entity may (1) submit the disputed documents to the trial court for an in camera inspection, or (2) present affidavit or deposition testimony 'containing the information necessary for the trial court to adjudge whether the privilege attaches.'" *Stewart* at ¶ 15, quoting *Bansal* at ¶ 15. If the health care entity satisfies its burden, the requested documents are unconditionally privileged and immune from discovery.

### 1. The Existence of a Peer Review Committee

{¶ 17} Under R.C. 2305.25(E), a "peer review committee" is defined as follows:

(1) "Peer review committee" means a utilization review committee, quality assessment committee, performance improvement committee, tissue

committee, credentialing committee, or other committee that does either of the following:

(a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;

(b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

(2) "Peer review committee" includes all of the following:

(a) A peer review board of a hospital* * *;

(c) A board or committee of a hospital, * * * when reviewing professional qualifications or activities of health care providers * * *.

{¶ 18} The affidavit of Charla Ulrich establishes that Mercy St. Vincent has a peer review process involving several committees that "conduct, among other things, credentialing, quality assurance and performance improvement activities" for the hospital, including "a medical staff peer review committee * * * which conducts quality assurance and performance improvement activities" and "a separate credentialing committee and a Medical Executive Committee which conducts credentialing activities of providers." The affidavit further establishes that the hospital's Board of Directors uses documents within a physician's credentialing file when reviewing the physician's professional qualifications.

13.

**{¶ 19}** Through this affidavit testimony, Mercy St. Vincent sufficiently establishes that its medical staff peer review committee, credentialing committee, and Medical Executive Committee are "peer review committees" under R.C. 2305.25(E)(1), and that the Board of Directors functions as a "peer review committee" when reviewing a physician's credentialing file under R.C. 2305.25(E)(2).

**{¶ 20}** The Cousinos argue, however, that in addition to establishing the existence of a peer review committee, Mercy St. Vincent must also prove that the peer review committee actually investigated "the incident" at issue. *Bailey v. ManorCare of Mayfield Hts.*, 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, ¶ 28 (stating that the party asserting the privilege must establish that "a peer review committee was in existence and that the facility actually investigated the incident or incidents that the disputed documents or information reference."); *Giusti v. Akron Gen. Med. Ctr.*, 9th Dist. Summit No. 24023, 2008-Ohio-4333, ¶ 17 (the party resisting discovery must show that "a peer review committee existed and that it actually investigated the incident.") But the cases that discuss this additional requirement concern a discreet "incident" or "incidents" of alleged medical malpractice. *See, e.g.*, *Giusti* (alleged failure to diagnose an aortic dissection); *Bailey* (wrongful death case alleging negligent failure to provide adequate medical, nursing, and health care). In contrast, this case concerns a hospital's alleged negligent credentialing of a physician. For all intents and purposes, Mercy St. Vincent's professional credentialing of Dr. Butto *is* "the incident" at issue, and Charla Ulrich's affidavit establishes that the credentialing committee, Medical Executive Committee, and

14.

the Board of Directors actually reviewed Dr. Butto's professional qualifications for credentialing purposes.

{¶ 21} Accordingly, we find that Mercy St. Vincent has met its burden to prove the existence of a peer review committee as defined by R.C. 2305.25(E).

## 2. Records Within the Scope of the Peer Review Committee

{¶ 22} Next, we consider whether Mercy St. Vincent has established that the documents that it refuses to produce are "records within the scope of a peer review committee" under R.C. 2305.252(A). There are two general categories of documents that are considered "records within the scope of a peer review committee" and therefore privileged.

{¶ 23} First, any documents that are generated by or exclusively for the peer review committee are absolutely protected from disclosure. "R.C. 2305.252 implicitly extends full and unconditional protection to records generated by the 'non-original source,' i.e., the peer review committee." *Bansal,* 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, at ¶ 17; *Stewart,* 12th Dist. Clermont No. CA2011-06-050, 2012-Ohio-228, at ¶ 14. For example, an incident report or risk management report is one type of document that is immune from discovery because it is created by or for the use of a peer review committee. *See* R.C. 2305.25(D) (defining an "incident report or risk management report" as "a report of an incident involving injury or potential injury to a patient * * * that is prepared by or for the use of a peer review committee of a health care entity and is within the scope of the functions of that committee."); R.C. 2305.253

15.

(providing that incident reports and risk management reports are "not subject to discovery in, and are not admissible in evidence in the trial of, a tort action.")  An incident report is just one example; *all* documents generated by or exclusively for a peer review committee are privileged and immune from discovery.  *See, e.g., Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶ 57 (finding the trial court erred by compelling physician to produce any applications for medical privileges because such documents were prepared exclusively for the peer review committee and therefore privileged under the peer review statute).

{¶ 24} Second, R.C. 2305.252 also protects any documents that are maintained in the peer review committee's records that were generated by an "original source"—i.e., a source other than the peer review committee itself—and then produced or presented to a peer review committee.  Any "original source" documents must be obtained "from the original sources and cannot be obtained from the peer review committee's proceedings or records."  R.C. 2305.252; *see also Abels v. Ruf*, 9th Dist. Summit No. 22265, 2005-Ohio-719, ¶ 13 (finding that the trial court erred by ordering appellant to produce credentialing documents that were generated by an original source, because while the appellees "may obtain such documents from their original source* * * they may not obtain them directly from Appellant.").

{¶ 25} Thus, all documents within a peer review committee's own records—regardless of the source—are absolutely immune from discovery in any civil action.  *Cook v. Toledo Hosp.*, 6th Dist. Nos. L-05-1373, L-06-1097, 2006-Ohio-5278,

16.

¶ 31, quoting *Tenan v. Huston*, 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549, ¶ 23 (11th Dist.) ("R.C. 2305.252 manifests the legislature's clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings."); *Bailey,* 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, at ¶ 21 ("the legislature's clear intent [is] to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings.").

{¶ 26} Mercy St. Vincent, through the affidavit testimony of Charla Ulrich, establishes that "[t]he credentialing file of Fouad Butto, M.D. consists entirely of documents generated by and created solely for use by the credentials committee, the Medical Executive Committee, and the Board of Directors in their review of his professional qualifications." Under the authorities discussed above, Dr. Butto's entire credentialing file is, therefore, absolutely privileged and immune from discovery under R.C. 2305.252. *Huntsman* at ¶ 59 ("the statute is clear regarding the confidentiality of information in a peer review committee's file").

{¶ 27} The Ulrich affidavit also states, however, that "[d]ocuments generated by a peer review committee or the credentials committee are placed in each *physician's file*, kept at the hospital" (emphasis added). As the trial court recognized, this statement implies that there is a "physician's file"—separate and apart from the privileged "credentialing file"— that contains some documents generated by the credentials committee or another unspecified peer review committee, and perhaps other non-privileged documents as well. It is not clear whether such a "physician's file" actually

17.

exists, however, given that Mercy St. Vincent's arguments relating to the peer review privilege are focused on the "credentialing file" only.

{¶ 28} Be that as it may, if Mercy St. Vincent identifies any responsive documents that are located outside the privileged credentialing file—whether in a "physician's file" or another location—and Mercy St. Vincent believes that those documents are nonetheless privileged under R.C. 2305.252 or 2305.253, it must separately establish that *each* of those documents are records within the scope of a peer review committee. Although the Ulrich affidavit is sufficient to establish the privileged nature of the credentialing file itself, it does not establish that any documents outside that file are protected by the peer review privilege. "[W]hile material contained in the file is privileged, and a facility cannot be compelled to reveal the contents of the file, material that a facility obtained and possesses separate and apart from the committee proceedings is not privileged." *Bailey*, 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, at ¶ 27. Moreover, although documents generated by an original source must be obtained from that source, it is possible for the health care entity *itself* to be the original source and "it cannot shield documents from disclosure just by circulating them during peer review proceedings." *Bansal, supra*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, at ¶ 16, fn. 3. For example, in *Selby v. Fort Hamilton Hosp.*, 12th Dist. Butler No. CA2007-05-126, 2008-Ohio-2413, the court found that EKG discrepancy reports that were created as a matter of hospital policy and routinely used in patient care were discoverable even though they had been reviewed by a peer committee.

18.

**{¶ 29}** Accordingly, we find that to the extent that Mercy St. Vincent claims that any responsive documents *outside the credentialing file* are privileged under R.C. 2305.252 or 2305.253, it must establish that each document was generated by or exclusively for the use of a peer review committee. Mercy St. Vincent must establish the privilege via affidavit testimony and submit the disputed documents to the trial court, under seal, within 14 days of this decision for an in-camera review. *See Bailey* at ¶ 40 (due to the lack of evidence before it, the trial court erred by granting a motion to compel without requiring Manor Care to submit the disputed documents for in-camera inspection).

**{¶ 30}** By way of example only, if there is a responsive document *outside the credentialing file* that Mercy St. Vincent claims to be an "incident report" and therefore privileged under R.C. 2305.252 and 2305.253, it must establish the privilege as to that specific document. Although Denise Fowler, the hospital's Risk Manager, provides affidavit testimony stating that "incident reports * * * are part of the hospital's peer review and quality process improvement and any related records are created for the purpose of quality improvement," this merely recites the applicable legal standard for documents that are proven to be incident reports under R.C. 2305.253. It is not enough to provide generalities regarding the types of documents that should be protected by the statute, *Bansal* at ¶ 14, and "labeling a document an incident report does not mean that it meets the statutory definition of an incident report." *Flynn v. Univ. Hosp. Inc.*, 1st Dist. No. C-060815, 2007-Ohio-4468, ¶ 6. Rather, Mercy St. Vincent must establish that the

19.

specific document, although found outside the credentialing file, is an incident report that was generated by or exclusively for the use of a peer review committee.

{¶ 31} To be clear, we do not order in-camera inspection for any documents that are found exclusively within the credentialing file because no documents can be obtained from a peer review committee's records—period. *Huntsman v. Aultman Hosp.*, 160 Ohio App.3d 196, 2005-Ohio-1482, 826 N.E.2d 384, ¶ 20 (5th Dist.) (finding that "there is no need for an in-camera inspection because no documents can be obtained from the peer review committee records, only from the records of the original source of the information."). Although the Cousinos argue otherwise, they rely upon case law that was decided under a prior version of the peer review statute, then codified at R.C. 2305.251, that did not contain the current language, which was added by the Ohio Legislature on April 9, 2003, specifying that even documents generated by original sources "are available only from the original sources *and cannot be obtained from the peer review committee's proceedings or records.*" R.C. 2305.252 (emphasis added); *compare with Wilson v. Barnesville Hosp.*, 7th Dist. Belmont No. 01 BA 40, 2002-Ohio-5186, ¶ 9-12 (relying upon prior version of R.C. 2305.251 that is no longer in effect).

{¶ 32} Finally, we address the Cousinos' overall argument that allowing Mercy St. Vincent to cloak its entire credentialing file in secrecy would prevent them from obtaining the very evidence they need to prove their negligent credentialing claim under R.C. 2305.251, including evidence that "the hospital * * * failed to comply with all material credentialing and review requirements of the accrediting organization" and that

20.

"the hospital * * * knew that [Dr. Butto] had developed a pattern of incompetence or otherwise inappropriate behavior, either of which indicated that [his] * * * professional privileges * * * should have been limited or terminated prior to [his treatment of Kelsie Cousino.]" R.C. 2305.251(B)(2)(b); 2305.251(B)(2)(c). But the Cousinos fail to acknowledge that this same statute explicitly states that "[n]othing in this section shall be construed as creating an exception to section 2305.252 of the Revised Code," which is the peer review statute. R.C. 2305.251(C).

{¶ 33} We recognize that the protection afforded by the peer review privilege of R.C. 2305.252 makes it difficult for a plaintiff to establish a negligent credentialing claim against a health care entity. But by enacting this law, the Ohio Legislature made a policy decision that it is more important to protect the absolute confidentiality of a credentialing committee's proceedings and records to ensure that its participants are free to engage in a meaningful and honest review of its providers, which should lead to the overall improvement of health care services as a whole. Given that public policy is the province of the legislature, not the court, we are bound to enforce the law as written.

{¶ 34} And although it is difficult to prove a negligent credentialing claim, it is not impossible. As noted above, documents are still available from their original source, and the statute explicitly allows individuals to testify regarding "matters within the individual's knowledge." R.C. 2305.252. In other words, "[i]nformation within the knowledge of a witness does not become privileged merely because it was disclosed to a committee member or discussed at a peer review committee meeting." *Smith*, 197 Ohio

21.

App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, at ¶ 12. It is for this reason that "a physician would be a fine 'outside, original source' for information or records concerning his or her education, medical training, licensing, as well as information regarding any past lawsuits or disciplinary actions, etc." *Tenan*, 165 Ohio App.3d 185, 2006-Ohio-131, 845 N.E.2d 549, at ¶ 63, fn. 21 (Rice, J., dissenting).

{¶ 35} In sum, we find that Mercy St. Vincent has met its burden to establish that Dr. Butto's credentialing file is privileged under R.C. 2305.252. To the extent that Mercy St. Vincent claims that any responsive documents outside the credentialing file are also privileged under R.C. 2305.252 or 2305.253, we remand for further proceedings as stated above.

### Attorney-Client Privilege

{¶ 36} Mercy St. Vincent also claims that the trial court's order to produce "any documents" in response to two specific requests would require it to disclose documents protected by the attorney-client privilege. In Ohio, the attorney-client privilege is governed by statute, R.C. 2317.02(A), and in matters not addressed in R.C. 2317.02(A), the common law.

{¶ 37} R.C. 2317.02(A) prevents an attorney from testifying "concerning a communication made to the attorney by a client in that relation or concerning the attorney's advice to a client" without the client's express consent. The Supreme Court of Ohio has stated that R.C. 2317.02(A) "governs communications directly between an attorney and a client," *Jackson v. Greger*, 110 Ohio St.3d 488, 2006-Ohio-4968, 854

22.

N.E.2d 487, ¶ 7, and although it is patently a testimonial privilege, "applies not only to prohibit testimony at trial, but also to protect the soughtafter communications during the discovery process." *Id.* at ¶ 7, fn.1.

{¶ 38} The common law attorney-client privilege is broader than R.C. 2317.02(A) and applies "(1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection is waived." *State ex rel. Leslie v. Ohio Hous. Fin. Agency*, 105 Ohio St.3d 261, 2005-Ohio-1508, 824 N.E.2d 990, ¶ 21, quoting *Reed v. Baxter*, 134 F.3d 351, 355-356 (6th Cir.1998). The privilege "does not require the communication to contain purely legal analysis or advice to be privileged. Instead, if a communication between a lawyer and a client would facilitate the rendition of legal services or advice, the communication is privileged." *State ex rel. Toledo Blade Co. v. Toledo-Lucas Cty. Port Auth.*, 121 Ohio St.3d 537, 2009-Ohio-1767, 905 N.E.2d 1221, ¶ 27, quoting *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991).

{¶ 39} Mercy St. Vincent argues that the trial court's order to produce "any documents" in response to request Nos. 23 and 24 would require it to disclose confidential attorney-client communications. Those two requests seek the following:

23.

23.  A listing of all claims reviews of any cases, by and on behalf of Mercy St. Vincent Medical Center, in regard to questionable care and/or treatment by Fouad Butto, M.D. from 2005 through to 2015.

24.  A listing of all risk management and/or liability prevention activities taken by Defendant, Mercy St. Vincent Medical Center, against Fouad Butto, M.D. from 2005 through to 2015.

{¶ 40} In support of its claim of attorney-client privilege, Mercy St. Vincent relies upon the affidavit of its Risk Manager, Denise Fowler, who testified that "[a]ctivities and documents related to claims and risk management are undertaken or prepared in anticipation of litigation under the direction of risk management, legal counsel and/or general counsel."  Mercy St. Vincent then argues that "Fowler's affidavit demonstrates that any materials [the Cousinos] seek fall under the scope of their activities taken in anticipation of litigation and in conference with counsel."  Mercy St. Vincent does not, however, provide any information regarding the allegedly privileged documents or the actual attorney-client communications that underlie its privilege claims.  And although the work product doctrine extends beyond confidential communications and protects any document "prepared in anticipation of litigation" by a party or a party's representative under Civ.R. 26(B)(6)(a), Mercy St. Vincent does not argue on appeal that it is withholding any documents on the basis of work product.

{¶ 41} Under Civ.R. 26(B)(6)(a), when a party withholds information or documents under a claim of privilege, "the claim shall be made expressly and shall be

24.

supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim." Generally speaking, "[w]ithout identification of the documents by the party seeking protection, the party seeking the information is unable to challenge the soundness of its claim." *Owens v. ACS Hotels, LLC*, 9th Dist. Summit No. 27787, 2016-Ohio-5506, ¶ 9. In this regard, we find *Cleveland Clinic Health Sys.-E Region v. Innovative Placements, Inc.*, N.D. Ohio No. 1:11-cv-2074, 2012 U.S. Dist. LEXIS 61897 and *Flynn v. Univ. Hosp., Inc.*, 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300 (1st Dist.2007) particularly instructive. In those cases, like here, a health care entity argued that documents relating to claim review activities were protected by the attorney-client privilege but, unlike here, those entities presented evidence relating to specifically-identified documents and attorney-client communications.

{¶ 42} In *Cleveland Clinic Health Sys.-E Region*, the hospital claimed that five specific documents, including a "Claim Review Report" and a "Safety Event Reporting System" or "SERS" quality review incident report, were protected by the attorney-client privilege and work product doctrine. It prepared a privilege log and submitted the five documents to the trial court for in-camera inspection. It also submitted an affidavit and deposition testimony related to the creation and use of those specific documents. Ultimately, the trial court found that the attorney-client privilege and work product doctrine protected the documents in question. *Id.* at *17-20.

25.

**{¶ 43}** Similarly, in *Flynn*, the court found that affidavit testimony from the hospital employee who had prepared a specific report, as well as the attorney who received the report, established that it was "a communication prepared by [the health care entity's] employee for the use of its attorneys in anticipation of litigation. Further, it demonstrated the existence of the attorney-client relationship and that the communication occurred in the context of that relationship." *Id.* at ¶ 15.

**{¶ 44}** In contrast, Mercy St. Vincent has asserted a very broad and generalized claim of attorney-client privilege for all documents that are potentially responsive to requests Nos. 23 and 24. It did not provide enough information to enable the Cousinos to contest the claim as required by Civ.R. 26(B)(6)(a).

**{¶ 45}** But, as we have recognized, in some circumstances it may be an abuse of discretion for the court to order discovery without conducting an in-camera inspection or providing the objecting party the opportunity to provide more-specific information to support its privilege claims. *See, e.g., Cargotec, Inc. v. Westchester Fire Ins. Co.*, 6th Dist. Lucas No. L-03-1116, 2003-Ohio-7257, ¶ 13-14 (trial court abused its discretion by denying appellant the opportunity to amend its privilege log and declining to conduct an in-camera review of the documents); *Grace v. Mastruserio*, 1st Dist. Hamilton No. C-060732, 2007-Ohio-3942, ¶ 34-40 (finding trial court abused its discretion in ordering production without in-camera inspection where "the record is insufficiently developed to determine whether compelling discovery of [the documents] violated the attorney-client privilege or the work-product doctrine.").

26.

{¶ 46} Here, given that Mercy St. Vincent's attorney-client privilege claim is closely intertwined with its peer review privilege claim—specifically, its claim that documents responsive to requests Nos. 23 and 24 are "incident reports" and therefore protected by R.C. 2305.252 and 2305.253—we find that the trial court abused its discretion by compelling Mercy St. Vincent to produce the disputed documents without additional information and an in-camera review. *See Bailey* at ¶ 40 (the trial court erred by granting a motion to compel without requiring health care entity to submit the disputed documents for in-camera inspection); *Bansal* at ¶ 18 (trial court should have required defendants to submit the disputed documents to it for an in-camera inspection to decide whether the peer review privilege applied).

{¶ 47} Accordingly, we reverse the trial court's order to the extent that it would have required the production of attorney-client privileged documents in response to request Nos. 23 and 24. On remand, Mercy St. Vincent must identify any allegedly privileged documents on a privilege log. As we have recognized, although not expressly required by Ohio law or the Ohio Civil Rules, a privilege log is a discovery tool that may be used to establish a claim of privilege or work-product under Civ.R. 26(B)(6)(a). *Cargotec*, at ¶ 10, 13. The privilege log should contain only enough information regarding the withheld documents and the underlying attorney-client communications "to enable the demanding party to contest the claim" and need not contain "[m]ore detailed descriptions [that] may risk revealing [the] privileged information." *Id.* at ¶ 13. Mercy

27.

St. Vincent's privilege log should also list any documents outside the credentialing file that are allegedly protected by the peer review privilege of R.C. 2305.252 or 2305.253.

**{¶ 48}** Mercy St. Vincent must submit its privilege log and the disputed documents under seal to the trial court within 14 days of this decision. *Csonka-Cherney v. Arcelormittal Cleveland, Inc.*, 8th Dist. Cuyahoga No. 100128, 2014-Ohio-836, ¶ 25 (ordering party to "construct a privilege log pursuant to Civ.R. 26(B)(6)(a)" on remand, and submit the log along with the documents under seal to the trial court).

### Conclusion

**{¶ 49}** We reverse the trial court's judgment entry to the limited extent that its order compelling the production of "any documents" responsive to requests Nos. 1, 4, 5, 7, 8, 10, 13, 14, 16, 19, 20, 21, 22, 23, 24, and 25 would have required the production of documents within Dr. Butto's credentialing file. Mercy St. Vincent has met its burden of demonstrating that the entire credentialing file is unconditionally privileged and immune from discovery under R.C. 2305.252. Mercy St. Vincent must, however, produce any documents that are responsive to these requests *and that are not contained in Dr. Butto's credentialing file* within 14 days of this decision. To the extent that Mercy St. Vincent believes that any responsive documents outside the credentialing file are privileged under R.C. 2305.252 or 2305.253, it must establish the privilege as to each specific document, via affidavit testimony, and submit the disputed documents under seal to the trial court within 14 days of this decision for an in-camera review.

28.

**{¶ 50}** We also reverse the trial court's order to the extent that its order compelling the production of "any documents" responsive to requests Nos. 23 and 24 would have required the production of documents protected by the attorney-client privilege. We order Mercy St Vincent to construct a privilege log pursuant to Civ.R. 26(B)(6)(a) on remand and to submit the privilege log along with the identified documents under seal to the trial court, within 14 days of this decision, for an in-camera review. Mercy St. Vincent's privilege log should also list any documents located *outside* the credentialing file that it claims are protected by the peer review privilege.

**{¶ 51}** To be clear, Mercy St. Vincent need not identify or submit any documents that are found exclusively within Dr. Butto's credentialing file, which is absolutely privileged and immune from discovery under R.C. 2305.252.

**{¶ 52}** Mercy St. Vincent's assignment of error is found well-taken. We therefore reverse the trial court's judgment, in part, and remand for further proceedings consistent with this decision. Appellees are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed, in part.

29.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Mark L. Pietrykowski, J.                  _____
                                                              JUDGE
James D. Jensen, J.

Christine E. Mayle, P.J.                  _____
CONCUR.                                                       JUDGE

                                          _____
                                                              JUDGE


This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.