[Cite as *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96751**

# SMITH, ADMR.,

APPELLEE,

v.

# CLEVELAND CLINIC ET AL.;

# COMMUNITY HEALTH PARTNERS ET AL., APPELLANTS.

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-744959

**BEFORE:** E. Gallagher, J., Sweeney, P.J., and Jones, J.

**RELEASED AND JOURNALIZED:** December 22, 2011

**ATTORNEYS:**

Nurenberg, Paris, Heller & McCarthy, Ellen M. McCarthy, and Brenda M. Johnson, for appellee Leonard L. Smith.

Bonezzi, Switzer, Murphy, Polito & Hupp and John S. Polito, for appellee Cleveland Clinic.

Mannion & Gray Co., L.P.A., Ryan K. Rubin, Todd A. Gray, and Kathleen M. Amerkhanian, for appellants Community Health Partners et al.

EILEEN A. GALLAGHER, Judge.

**{¶ 1}** Appellants appeal an interlocutory order denying a motion for a protective order. Defendants-appellants Community Health Partners, Community Health Partners of Ohio, Community Health Partners Regional Health System, Community Health Partners Regional Medical Center, and Eli White (hereinafter collectively referred to as "defendants-appellants") [1] argue that the trial court erred in determining that no peer-review privilege existed and that defendants-appellants waived any privilege that may have existed. For the following reasons, we affirm the decision of the trial court.

**{¶ 2}** This is a medical-malpractice and wrongful-death action arising from medical care and treatment provided to decedent Howard Lester Smith. Leonard Smith is the duly appointed administrator of the estate of Howard Lester Smith and has brought this suit against defendants-appellants.

**{¶ 3}** The care and treatment of Howard Lester Smith began on February 17, 2010, when Mr. Smith, then aged 73, underwent elective knee-replacement surgery performed by Victor Nemeth, M.D., at Community Health Partners. The surgery was uneventful, and orders for routine blood work were placed on February 17 and 18. On February 19, 2010, Mr. Smith went into cardiac arrest at 10 a.m. It is plaintiff's contention that Mr. Smith's sudden cardiac arrest was caused by a critically high

---

[1] The instant lawsuit names other entities as defendants, none of which are parties to the present appeal. For clarity's sake, they have not been mentioned.

potassium level in his blood that was detected in a blood draw that had been sent to defendants-appellants' laboratory for analysis. Because of malfunctioning equipment and low staffing, that elevated level was not reported to the hospital floor until after Mr. Smith had arrested. After Mr. Smith went into cardiac arrest, he was declared brain-dead by his treating physicians and passed away on March 4 after being removed from life support.

**{¶ 4}** Prior to Mr. Smith's death, Leonard Smith, along with his three siblings, met with defendants-appellants' Chief Medical Officer, Haysam El-Dalati, M.D., on March 1, 2010, to discuss the care and treatment of their father. During the meeting, Leonard Smith and his family members used a hidden tape-recording device to record the content of the meeting, unbeknownst to Dr. El-Dalati and the two staff members who were present on behalf of the defendants-appellants. For one hour, Leonard Smith and his siblings questioned Dr. El-Dalati regarding his knowledge of the treatment provided to their father. In response, Dr. El-Dalati made sympathetic and apologetic comments to the plaintiffs and admitted fault on the part of the hospital for Howard Lester Smith's current condition.

**{¶ 5}** On January 3, 2011, plaintiffs filed this medical-malpractice and wrongful-death-and-survivorship action in Common Pleas Court. Subsequent to the filing, plaintiffs noticed the deposition of Dr. El-Dalati. During the initial discovery phase of this trial, defendants-appellants learned of the Smith family's use of the hidden recording device. In response, defendants-appellants filed a motion for a protective order,

requesting an order precluding plaintiffs from deposing Dr. El-Dalati. Specifically, defendants-appellants argued that any information held by Dr. El-Dalati was derived from his participation in peer-review activities and, thus, was not discoverable under Ohio's peer-review-privilege statute, R.C. 2305.252. The motion also requested exclusion of the tape recording of the March 1, 2010 meeting. Plaintiffs opposed the motion, and on April 29, 2011, the trial court denied defendants-appellants' motion, finding as follows:

> It is not clear that the "Root Cause Analysis" Dr. El-Dalati did falls within the definition of "Peer Review Committee." Even if it does, Dr. El-Dalati waived the privilege by communicating the committee's findings to the patient's family. The disclosures here were to non-professionals, and as such, were not part of the "free flow of information" among professionals aimed at improving the quality of health care.

{¶ 6} Defendants-appellants appeal, raising the three assignments of error contained in the appendix to this opinion.

{¶ 7} In their first assignment of error, defendants-appellants argue that the trial court erred in not finding its root-cause analysis committee to be a peer-review committee whose activities are protected under R.C. 2305.252. We disagree.

{¶ 8} Ordinarily, a discovery dispute is reviewed under an abuse-of-discretion standard. *Wall v. Ohio Permanente Med. Group, Inc.* (1997), 119 Ohio App.3d 654, 695 N.E.2d 1233. However, the Supreme Court of Ohio recently stated that "if the discovery issue involves an alleged privilege * * * it is a question of law that must be reviewed de novo." *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, 943 N.E.2d 514, ¶ 13. Because this portion of the appeal involves a discovery issue surrounding the peer-review-privilege statute, R.C. 2305.252, we must review this assigned error under a

de novo standard of review. *Ward.*

{¶ 9} The peer-review privilege did not exist at common law. *Nilavar v. Mercy Health Sys.* (S.D.Ohio 2002), 210 F.R.D. 597. Thus, being in derogation of the common law, any statutory privilege must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute. *Ward.* Further, the party claiming the privilege has the burden of proving that the privilege applies to the requested information. *Svoboda v. Clear Channel Communications, Inc.*, 156 Ohio App.3d 307, 2004-Ohio-894, 805 N.E.2d 559, citing *Waldmann v. Waldmann* (1976), 48 Ohio St.2d 176, 358 N.E.2d 521.

{¶ 10} The General Assembly established the peer-review privilege in R.C. 2305.252. It states as follows:

> Proceedings and records within the scope of a peer review committee of a health care entity shall be held in confidence and shall not be subject to discovery or introduction in evidence in any civil action against a health care entity or health care provider, including both individuals who provide health care and entities that provide health care, arising out of matters that are the subject of evaluation and review by the peer review committee. No individual who attends a meeting of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall be permitted or required to testify in any civil action as to any evidence or other matters produced or presented during the proceedings of the peer review committee or as to any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof. Information, documents, or records otherwise available from original sources are not to be construed as being unavailable for discovery or for use in any civil action merely because they were produced or presented during proceedings of a peer review committee, but the information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records. An individual who testifies before a peer review committee, serves as a representative of a peer

review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee shall not be prevented from testifying as to matters within the individual's knowledge, but the individual cannot be asked about the individual's testimony before the peer review committee, information the individual provided to the peer review committee, or any opinion the individual formed as a result of the peer review committee's activities. An order by a court to produce for discovery or for use at trial the proceedings or records described in this section is a final order.

{¶ 11} The purpose of the statute is to protect the integrity of the peer-review process in order to improve the quality of health care. *Giusti v. Akron Gen. Med. Ctr.,* 178 Ohio App.3d 53, 2008-Ohio-4333, 896 N.E.2d 769; *Gureasko v. Bethesda Hosp.* (1996), 116 Ohio App.3d 724, 689 N.E.2d 76. The statute is designed to protect individuals who provide information without fear of reprisal and to protect the free exchange of information. *Smith v. Manor Care of Canton, Inc.*, Stark App. Nos. 2005-CA-00100, 2005-CA-00160, 2005-CA-00162, and 2005-CA-00174, 2006-Ohio-1182. The statutes, however, are not designed to hinder civil lawsuits. *Smith.* The peer-review privilege is not a generalized cloak of secrecy over the entire peer-review process. *Giusti.* "If all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee." *Huntsman v. Aultman Hosp.*, Stark App. No. 2006 CA 00331, 2008-Ohio-2554, ¶ 47, citing *Wilson v. Barnesville Hosp.*, 151 Ohio App.3d 55, 2002-Ohio-5186, 783 N.E.2d 554.

{¶ 12} This statute protects several classes of people from testifying in civil lawsuits, including those who attend meetings or serve as members of a peer-review

committee, those who work for, or on behalf of, the committee, and those who provide information to the committee. *Giusti.* These persons are not permitted to testify regarding "any evidence or other matters produced or presented during the proceedings of the * * * committee" or "any finding, recommendation, evaluation, opinion, or other action of the committee or a member thereof." R.C. 2305.252. These individuals, however, "shall not be prevented from testifying as to matters within the individual's knowledge." Id. Information within the knowledge of a witness does not become privileged merely because it was disclosed to a committee member or discussed at a peer-review-committee meeting. *Giusti.*

{¶ 13} The plain language of the statute shields information from discovery and use at trial in "civil action[s] * * * arising out of matters that are the subject of evaluation and review by the * * * committee." R.C. 2305.252. A party claiming the peer-review privilege, at "a bare minimum" must show that a peer-review committee existed and that it actually investigated the incident. *Giusti*; *Smith.*

{¶ 14} In order to invoke the peer-review privilege to protect a deponent who qualifies for protection under R.C. 2305.252 from answering certain questions, a party must establish that the information sought falls into one of the categories of testimony protected by the statute. *Giusti,* 178 Ohio App.3d 53, 2008-Ohio-4333. Under the statute, a qualifying deponent cannot be asked to reveal (1) his testimony before the peer-review committee, (2) information that he provided to the committee, or (3) opinions that he formed as a result of the committee's activities. See R.C. 2305.252; see also

*Giusti*; *Manley v. Heather Hill, Inc*., 175 Ohio App.3d 155, 2007-Ohio-6944, 885 N.E.2d 971, citing *Rinaldi v. City View Nursing & Rehab. Ctr., Inc*., Cuyahoga App. No. 85867, 2005-Ohio-6360 (proponent of privilege must establish that requested documents were prepared by or for the use of a peer-review committee).

{¶ 15} As stated above, the party claiming the privilege has the burden of proving that the privilege applies to the requested information. *Svoboda,* 156 Ohio App.3d 307, 2004-Ohio-894; *Selby v. Fort Hamilton Hosp.,* Butler App. No. 2007-05-126, 2007-Ohio-2413. To do so, the health-care entity must first establish the existence of a committee that meets the statutory definition of "peer review committee" contained in R.C. 2305.25(E). *Ward; Smith.* Second, the health-care entity must establish that each of the documents that it refuses to produce in response to a discovery request is a "record[s] within the scope of a peer review committee." R.C. 2305.252. The health-care entity must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer-review committee's records. *Bansal v. Mt. Carmel Health Sys.*, Franklin App. No. 09AP-351, 2009-Ohio-6845.

{¶ 16} Accordingly, defendants-appellants in the present case have submitted the affidavit of Dr. El-Dalati in support of their contention that the information relayed to the Smith family during the March 1, 2010 meeting is protected from disclosure by the peer-review statute. In his affidavit, Dr. El-Dalati states that he is the Regional Chief Medical Officer, that he was not involved in any medical care or treatment provided to

Mr. Smith, and that any information he gleaned concerning Mr. Smith's care resulted from his participation as a committee member in the "privileged, protected and confidential Root Cause Analysis/Peer Review" that took place on February 24, 2010.

{¶ 17} The defendants-appellants have not provided this court with any other evidence surrounding the root-cause-analysis/peer-review-committee meeting that allegedly took place on February 24, 2010. More specifically, this court has no record of the defendants-appellants' written policies and procedures, which would presumably outline the purpose of the root-cause-analysis/peer-review committee, its members, its scope of authority, or any other proof that the proceedings were aimed at quality of care or disciplinary issues. See *Smith*. More importantly, outside the affidavit of Dr. El-Dalati, we have no independent proof that this February 24, 2010 meeting was aimed at peer-reviewing Mr. Smith's case.

{¶ 18} This lack of independent evidence is all the more important when taken into context with Dr. El-Dalati's disclosures to the Smith family during the March 1, 2010 meeting. Dr. El-Dalati opened the meeting by telling the family, "[I]t's my job to communicate to you everything that we do and everything that we find." He further advised the family, "We believe in being open, honest about everything that happened, we hide nothing." Dr. El-Dalati apologized for the current condition of Mr. Smith and went on to describe to the family that some of the equipment in the laboratory was malfunctioning that day, that there was a delay in getting blood analysis completed, and that the defendants-appellants did not complete the blood analysis on Mr. Smith as

quickly as they normally did.

{¶ 19} Throughout the meeting, Dr. El-Dalati repeatedly stated that the peer-review process had not yet begun and that when the defendants-appellants arrived at peer-review conclusions, those results would be shared with the family. Dr. El-Dalati expressly differentiated between the "open, honest" conversation he was engaging in with the family on March 1, 2010 and the not-yet undertaken peer-review process, of which he was a committee member, and which would take place in the future.

{¶ 20} In particular, Dr. El-Dalati indicated that he was speaking in his capacity as the chief medical officer and as a representative of defendants-appellants. Further, he stated that it was his intention to disclose to the Smith family the information he had obtained and conclusions he had reached in the course of the "root cause analysis."

> But I am a heart surgeon and I'm also the Chief Medical Officer, which means that I'm responsible for quality and patient safety and so all the events that occur, you know, I get involved in all of the analysis and the action plans to see how things went wrong and how things should be fixed, and it's my job to communicate to you everything that we do and everything that we find.

> So we will share with you the results of whether the medical care he received was appropriate. The reason I'm here with you is [to] talk about what it is in the hospital process that could have gone better and what actually, you know, happened. * * * We believe in being open, honest about everything that happened, we hide nothing because we feel that that's the only way we can progress forward in terms of how we treat our patients and how you want to feel that your loved ones are being treated. Now, in terms of what we found, the biggest issue was there was a delay in getting the potassium back.

{¶ 21} Dr. El-Dalati also represented that the root-cause analysis was not a

peer-review proceeding and that those proceedings had yet to be conducted as of the March 1, 2010 meeting. Specifically, Dr. El-Dalati stated, "This was a serious event and it has to go to Peer Review. It will be Peer Reviewed and then we will share the results of that with you."

{¶ 22} Notwithstanding the foregoing, defendants-appellants, through Dr. El-Dalati's own affidavit, attempt to classify the February 24, 2010 meeting as a "root-cause analysis/peer review." This court is not persuaded by the defendants-appellants' labeling.

{¶ 23} Ohio courts have been adamant that merely labeling a committee or a document "peer review" is insufficient to meet the burden of proving that the privilege applies to the requested information. For example, this court found it insufficient to simply title reports "investigation report" or "incident statement." *Rinaldi v. City View Nursing & Rehab. Ctr.,* Cuyahoga App. No. 85867, 2005-Ohio-6360, ¶ 20 (titles of documents are "insufficient to demonstrate that the reports were incident reports actually prepared for use by [a] peer review committee"). See also *Flynn v. Univ. Hosp., Inc.*, 172 Ohio App.3d 775, 2007-Ohio-4468, 876 N.E.2d 1300, ¶ 6, ("[l]abeling a document an incident report does not mean that it meets the statutory definition of an incident report * * *").

{¶ 24} Nor are we convinced that Dr. El-Dalati's affidavit provides the requisite proof that (1) a peer-review committee exists and (2) that the committee actually reviewed Mr. Smith's case. *Smith*. In *Selby,* the Twelfth District upheld a trial-court order

requiring a hospital to turn over EKG-discrepancy reports prepared by hospital staff, even though an affidavit from the hospital's former medical director represented that the reports were used for quality control and were not essential to patient care. The court noted that while the EKG reports may have been examined by a peer-review committee as described in the medical director's affidavit, the evidence in the record did not support his conclusion. Id. The court found that the record failed to demonstrate that the EKG reports were peer-review reports or that the reports were actually peer reviewed. Id. More importantly, the court stated that other than the director's blanket statement in his affidavit, the appellant provided no evidence that the reports were actually reviewed by a peer-review committee. Id.

{¶ 25} We find the *Selby* court's rationale applicable to the instant case. Here, the defendants-appellants have provided this court with nothing more than a single affidavit, which contains blanket statements from Dr. El-Dalati, as proof that a peer-review committee meeting the statutory requirements was convened. Further, Dr. El-Dalati's affidavit directly contradicts his own statements made to the family, wherein he repeatedly stated that he was a part of the peer-review committee and that the peer-review process had not yet begun. The defendants-appellants have provided this court with no other independent evidence that the information disclosed during the March 1, 2010 meeting resulted from Dr. El-Dalati's participation in a peer-review meeting.

{¶ 26} Based on the foregoing, we agree with the trial court's conclusion that "it is not clear that the 'Root Cause Analysis' Dr. El-Dalati did falls within the definition of

'Peer Review Committee.' " Therefore, and absent any independent evidence to the contrary, the defendants-appellants have failed to meet their burden of proving that the peer-review privilege applies to the disclosures made to the Smith family on March 1, 2010. Accordingly, we conclude that those disclosures are not protected by the peer-review privilege as outlined in R.C. 2305.252. Having concluded that the peer-review privilege of R.C. 2305.252 does not apply to the instant case, we find no error in the trial court's rulings denying defendants-appellants' motion for a protective order and its motion to exclude the product of the hidden recording device.

{¶ 27} The defendants-appellants' first assignment of error is overruled.

{¶ 28} Our analysis of the defendants-appellants' first assignment of error renders their remaining assignments of error moot.

Judgment affirmed.

SWEENEY, P.J., and JONES, J., concur.

_____

APPENDIX

Assignments of Error:

I. The trial court erred in not finding defendant-appellant's root cause analysis committee to be a "peer review committee" whose activities are protected under O.R.C. 2305.252, resulting in the required protection of Dr. El-Dalati's opinions formed as a result of his participation in that committee.

II. The trial court erred in finding that Dr. El-Dalati waived the peer review privilege by disclosing his opinions to family members of plaintiff's deceased.

III.   The trial court erred by stating that the deposition of Dr. El-Dalati's could go forward, and by refusing to exclude the tape recording containing Dr. El-Dalati's statements, as the entirety of Dr. El-Dalati's knowledge of the case is derived from peer review proceedings, and consequently, Ohio's peer review statute precludes discovery or use at trial of Dr. El-Dalati's testimony, statements, and/or knowledge.

_____