[Cite as *Triplett v. Univ. Hosps. Cleveland Med. Ctr.*, 2022-Ohio-3553.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

DANNY TRIPLETT,                           :

    Plaintiff-Appellee,            :
                              No. 111271

    v.                             :

UNIVERSITY HOSPITALS
CLEVELAND MEDICAL CENTER,
ET AL.,                                   :

    Defendant-Appellant.           :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** October 6, 2022

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-20-936289

---

### *Appearances:*

Nurenberg, Paris, Heller & McCarthy Co., L.P.A., Brenda
M. Johnson, Pamela Pantages, William S. Jacobson, and
Dana M. Paris, *for appellee.*

Reminger Co., L.P.A. and Brian D. Sullivan, Jeanne M.
Mullin, and Matthew J. Turkalj, *for appellant.*

CORNELIUS J. O'SULLIVAN, JR., J.:

{¶ 1} Defendant-appellant, University Hospitals Health System, Inc., filed

this interlocutory appeal to challenge the trial court's decision to grant, individually

and as the administrator of the estate of his late wife, plaintiff-appellee Danny R. Triplett's motion to compel and deny his motion for a protective order. After a thorough review of the trial court record and the law, we reverse.

{¶ 2} On April 30, 2020, Carly Triplett ("Triplett") gave birth to her second child at University Hospitals ("UH"). Triplett and her newborn child were in the hospital for approximately 48 hours before they were discharged. On May 4, 2020, while taking her newborn to his first well-baby visit, Triplett collapsed in the pediatrician's waiting room. Triplett underwent emergency surgery at another hospital, but efforts to save her were unsuccessful and she passed away.

{¶ 3} On August 21, 2020, appellee filed a complaint against University Hospitals Health System, Inc. and numerous entities and individually named care providers alleging they were negligent in the postpartum care of Triplett and that negligent care resulted in her death. Appellee asserted a claim for medical negligence alleging that the defendants' care fell below the medical and surgical standards of care and were negligent in the way they failed to recognize and treat Triplett's postpartum retroperitoneal bleed. Appellee also alleged that the defendants' negligence resulted in Triplett's death, causing appellants to be liable for wrongful-death damages under R.C. Chapter 2125.

{¶ 4} Appellee filed an amended complaint asserting claims against University Hospitals Cleveland Medical Center and University Hospitals Medical Group. The substantive allegations asserted in the amended complaint remained

the same. On May 6, 2021, appellee voluntarily dismissed his claims against all defendants except for UH.

{¶ 5} On November 17, 2021, appellee filed a motion to compel appellant to produce "the Obstetric Hemorrhage Learning Modules in effect and reviewed by any of Carly Triplett's UH care providers from 2010 up to and including the time of Mrs. Triplett's discharge from UH on May 2, 2020" (hereinafter referred to as "Relias obstetric hemorrhage modules" or "modules"). Appellant responded by filing a motion for a protective order on November 29, 2021.

{¶ 6} In a journal entry dated February 2, 2022, the trial court denied appellant's motion for a protective order and granted appellee's motion to compel finding that the modules were not subject to any cognizable privilege under R.C. 2305.252. The court reasoned that the modules "are apparently prepared by a third-party vendor and are sold to numerous health care facilities and were not prepared or altered in any demonstrable way by University Hospitals so as to require the consideration of a privilege." The court also found that there was no evidence the modules were used for any "remedial or investigative instructional purpose." The court determined that

> UH has not met its burden to establish that the Relias learning modules, which already are in Plaintiff's possession and were obtained from a third party, were created by, or substantially or exclusively for, a peer review committee meeting the requirements of R.C. 2305.25(E). Even if it had, UH has waived any such privilege by failing to raise it in a timely manner in the course of this litigation, and by otherwise disclosing its use of the training modules in its own publications and promotional materials.

{¶ 7} The court ordered appellant to produce the modules within seven days of the court's journal entry.

{¶ 8} It is from this order that appellant filed this interlocutory appeal and raises the following assignment of error:

> The trial court incorrectly compelled UH to produce learning/training modules utilized by UH's obstetric care providers as part of the hospital's quality assurance process when those documents constituted privileged peer review material.

**Law and Analysis**

{¶ 9} In its sole assignment of error, appellant argues that the trial court erred in compelling it to produce the Relias obstetric hemorrhage modules because the modules were covered by peer review privilege.

{¶ 10} Civ.R. 26(B)(1) governs the scope of discovery and provides that parties may obtain discovery regarding "any nonprivileged matter * * *." The party claiming privilege has the burden of establishing that the privilege applies to the requested information. *Waldmann v. Waldmann*, 48 Ohio St.2d 176, 178, 358 N.E.2d 521 (1976).

{¶ 11} Generally, a discovery dispute is reviewed for abuse of discretion. *Hance v. Cleveland Clinic*, 2021-Ohio-1493, 172 N.E.3d 478, ¶ 16 (8th Dist.), citing *Med. Mut. of Ohio v. Schlotterer*, 122 Ohio St.3d 181, 2009-Ohio-2496, 909 N.E.2d 1237. However, whether the information sought in discovery is confidential and privileged "is a question of law that is reviewed de novo." *Hance* at

*id.* Accordingly, we review de novo whether the peer review privilege applies to the modules in this case.

{¶ 12} Appellant contends that the Relias obstetric hemorrhage modules were within the scope of its "quality assurance committee," which used the modules to improve patient care. R.C. 2305.252 (A) states that proceedings and records "within the scope" of a peer review committee are not subject to discovery. To avail itself of the statutory privilege, the party asserting a peer review privilege must "establish the existence of a committee that meets that statutory definition of 'peer review committee' contained in R.C. 2305.25(E)." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 15 (8th Dist.). The party must then show that each of the documents it claims are privileged constitutes a "record within the scope of a peer review committee." *Id.* The party "must provide evidence such to the specific documents requested, not generalities regarding the types of documents used or contained in a peer-review committee's records." *Id.*

{¶ 13} The privilege "is not a generalized cloak of secrecy over the entire peer review process." *Id.* The statutory peer review privilege "must be strictly construed against the party seeking to assert it and may be applied only to those circumstances specifically named in the statute." *Id.*

{¶ 14} Therefore, as it applies to this case, appellant has the burden of showing that (1) its quality assurance committee falls under the statutory definition of a peer review committee and (2) the Relias obstetric hemorrhage modules were records that were within the scope of that committee.

**Appellant's Quality Assurance Committee**

{¶ 15} Under R.C. 2305.25(E)(1)(a), a "peer review committee" includes a "quality assurance committee" that "[c]onducts professional credentialling or quality review activities involving the competence of, professional conduct of, or quality of care provided by healthcare providers, including both individuals who provide health care and entities that provide health care." R.C. 2305.25(E)(2)(c) provides that a peer review committee may include a "board or committee of a hospital when reviewing professional qualifications or activities of individual health care providers."

{¶ 16} Appellant submitted the affidavit of Nancy Cossler, M.D. ("Dr. Cossler"), Chief of Systems Quality for Obstetrics at University Hospitals and Vice Chair for Quality and Patient Safety for University Hospitals MacDonald Women's Hospital, in support of its motion for a protective order. Dr. Cossler averred that she was a member of the quality assurance committee at UH and was personally involved, in her professional capacity, in obtaining and implementing the Relias modules for use as a quality measure and tool to use with obstetric care providers working on the labor, delivery, and postpartum units at UH. In pertinent part, Dr. Cossler stated the following:

> 4. University Hospitals has a quality-assurance committee which meets as needed and as part of its regular business activities, and conducts quality-review activities involving the quality of care provided by its various care providers.

> 7. In my capacity as Chief of Systems Quality for Obstetrics at University Hospitals, as well as the Vice-Chair for Quality and Patient

Safety for University Hospitals MacDonald Women's Hospital, and as a member of the quality-assurance committee at University Hospitals, I was personally involved in obtaining and implementing the Relias learning/training modules from Relias, a third-party company, for use on the labor and delivery and post-partum units at University Hospitals.

8. The Relias learning/training modules are used solely as a tool by University Hospitals' quality assurance committee to provide feedback on an individual clinician based on how the particular clinician answered certain prompts and questions that are asked in the modules.

9. These module prompts differ from provider to provider depending on the answer the provider selects. In that regard, the modules provide a learning path which prompts the provider based upon the answers selected.

10. The Relias learning/training modules were in effect at the time of Carly Triplett's hospitalization at University Hospitals in April and May of 2020, and each of Carly Triplett's obstetric care providers at University Hospitals completed the Relias learning/training modules at the quality-assurance committee's direction, the results of which are then reviewed by members of the quality-assurance committee.

Affidavit of Nancy Cossler, M.D. (Nov. 29, 2021).

{¶ 17} Appellee argues that Dr. Cossler's affidavit is insufficient to show a quality assurance committee exists because the affidavit contains only conclusory allegations asserting that a qualifying committee exists, which are insufficient, absent further evidence, to establish that appellant has a peer review committee for purposes of R.C. 2305.25(E).

{¶ 18} Appellee cites *Smith*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, to support his position. In *Smith*, the defendants-appellants sought a protective order after the plaintiffs-appellees sought to depose the chief medical officer of the hospital where their loved one died. The plaintiffs met with the chief

medical officer on March 1, 2010, prior to their loved one's death and surreptitiously recorded the conversation. Appellants submitted the affidavit of the chief medical officer in support of their contention that the information relayed to the decedent's family during this meeting was protected from disclosure by the peer review privilege. According to the affidavit, the chief medical officer was not involved in the decedent's care and any information he gleaned concerning the decedent's care was from his participation as a committee member during a February 24, 2010 "Root Cause Analysis/Peer Review" meeting. *Id.* at ¶ 16.

{¶ 19} This court found that the appellants did not provide any evidence, except for the doctor's affidavit, that the February 24, 2010 meeting took place, did not have a record of the committee's written policies and procedures, and presented no independent proof that the February meeting was aimed at peer reviewing the decedent's case. *Id.* at ¶ 17. Moreover, this court noted that the doctor's statements to the family that the "root cause analysis" was not a "peer review" proceeding and that such proceedings had yet to be conducted as of his March 1, 2010 meeting with the family, directly contradicted what the doctor swore to in his affidavit. *Id.* at ¶ 19- 22.

{¶ 20} *Smith* is distinguishable from this case. In *Smith*, the doctor's statements to the family clearly conflicted with his affidavit regarding whether a root cause analysis/peer review meeting had taken place. Although there is some conflicting deposition testimony among witnesses in this case, there is not conflicting evidence about the existence of a peer review committee at UH.

{¶ 21} We find that Dr. Cossler's affidavit is sufficient to show that appellant has a quality assurance committee, "which meets as needed and as part of its regular business activities, and conducts quality-review activities involving the quality of care provided by its various care providers." The evidence appellant presented is sufficient to show that its quality assurance committee falls under the statutory definition of a peer review committee.

**Relias Obstetric Hemorrhage Modules**

{¶ 22} Next, we consider whether the Relias obstetric hemorrhage modules are within the scope of UH's quality assurance committee.

{¶ 23} R.C. 2305.252 protects any documents that are maintained in the peer review committee's records that were generated by an "original source" — i.e., a source other than the peer review committee itself — and then produced or presented to a peer review committee. *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550, 111 N.E.3d 529, ¶ 24 (6th Dist.). Any "original source" documents must be obtained "from the original sources and cannot be obtained from the peer review committee's proceedings or records." R.C. 2305.252. The record reflects that appellee obtained the Relias obstetric hemorrhage modules, as well as a list of UH employees that had completed the modules, via subpoena from Relias.

{¶ 24} "[A]ll documents within a peer review committee's own records — regardless of the source — are absolutely immune from discovery in any civil action." *Cousino* at ¶ 25; citing *Cook v. Toledo Hosp.*, 169 Ohio App.3d 180, 2006-Ohio-5278, 862 N.E.2d 181, ¶ 31 (6th Dist.) ("R.C. 2305.252 manifests the legislature's

clear intent to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings."); *see also Bailey v. ManorCare of Mayfield Hts.*, 8th Dist. Cuyahoga No. 99798, 2013-Ohio-4927, ¶ 21 ("The legislature's clear intent [is] to provide a complete shield to the discovery of any information used in the course of a peer review committee's proceedings.").

{¶ 25} R.C. 2305.252 explicitly delineates one type of record within the scope of a peer review committee when it permits health care entities to refuse to answer discovery requests for "information, documents, and records otherwise available from original sources * * * produced or presented during proceedings of a peer review committee." *Bansal v. Mt. Carmel Health Sys.*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, ¶ 16. Based upon this provision, documents sought from a health care entity are peer review records if the health care entity proves that those documents were generated by an original source and that they were produced or presented to the peer review committee. *Id.*

{¶ 26} The record reflects that appellant purchased four online modules from Relias: fetal assessment and monitoring, obstetric hemorrhage, hypertensive disorders of pregnancy, and shoulder dystocia. Dr. Cossler testified that the "online learning modules that were assigned to all providers and the relevant nurses to take on a rotating two-year basis." (Cossler deposition p. 102). "We have four modules, two a year. We rotate them through a two-year cycle." (*Id.* at p. 103).

{¶ 27} Dr. Cossler averred that the Relias modules were used solely as a tool by appellant's quality assurance committee and each of Triplett's obstetric care

providers at University Hospitals completed the Relias modules at the quality assurance committee's direction, the results of which are then reviewed by members of the quality assurance committee.

{¶ 28} Appellee contends that the Relias obstetric hemorrhage modules are not covered by peer review privilege because they were widely accessible to medical staff at UH. Dr. Cossler identified two UH educators involved in the use of Relias learning modules: Cinnamin Ludwig, a nurse educator, and Celina Cunanan. (*Id.* at p. 104-105). Dr. Cossler testified that Cunanan was involved in the implementation of the modules "to the extent of assuring that her folks all completed [them]." (*Id.* at p. 105-106). Cunanan testified that she is the division director of nurse midwifery, the system chief overseeing nurse midwifery, and UH's chief diversity officer. (Cuananan deposition, p. 10). When asked if she was familiar with the Relias modules and if she had participated "in the training of nurses and nurse midwives" on the modules, Cunanan testified that "as an employee * * * I do modules myself and my nurse practitioners and nurse midwives are involved in that as well." (*Id.* at p. 13). She testified, however, that she is not involved in training or evaluating her nurses on the modules. *Id.*

{¶ 29} Dr. Lauren Bouchard, a resident involved in the delivery of Triplett's baby, testified at deposition that she completed the obstetric hemorrhage modules as part of her orientation:

> It was one of our assignments during orientation, so when I started [at UH], so that would have been in approximately July of 2016.

(Bouchard deposition, p. 12).

{¶ 30} Although the record shows that the Relias obstetric hemorrhage modules were accessible to UH medical staff, the modules were within the scope of the peer review committee and were therefore privileged. "Absent evidence that the requested documents were created by and/or exclusively for a peer review committee, or generated by an original source and produced or presented to a peer review committee, the party asserting the R.C. 2305.252 privilege has not met its burden." *Bansal*, 10th Dist. Franklin No. 09AP-351, 2009-Ohio-6845, at ¶ 18. Dr. Cossler averred that, as a member of UH's quality assurance committee, she was personally involved in obtaining and implementing the modules obtained from Relias, which were solely used as a tool by UH's quality assurance committee to provide feedback to medical staff. The evidence presented is that the Relias obstetric hemorrhage modules were generated by an original source, Relias, for UH's quality assurance committee to assess, train, and educate UH employees. We find that appellant has met its burden.

**Waiver**

{¶ 31} Appellee claims that any privilege appellant claims is waived subject to R.C. 2305.252(A), which provides that "the information, documents, or records actually released cease to be privileged under this section." Appellee claims that the obstetric hemorrhage modules were "released" when the modules were produced in response to a subpoena, when UH disclosed in a 2019 article that it uses the modules as training materials, through use of the modules in "multiple depositions," and by

filing the modules with the court, not under seal. The trial court concluded that appellant waived its right to assert its privilege by failing to timely raise it and by otherwise disclosing its use of the training modules in its own publications and promotional materials.

{¶ 32} R.C. 2305.252 provides:

> The release of any information, documents, or records that were produced or presented during proceedings of a peer review committee or created to document the proceedings does not affect the confidentiality of any other information, documents, or records produced or presented during those proceedings or created to document them. Only the information, documents, or records actually released cease to be privileged under this section.

{¶ 33} Appellant does not waive its privilege because Relias, the original source of the modules, responded to a subpoena propounded upon it by appellee. Appellant also does not waive its privilege by disclosing, in an article in a medical journal, that it uses the modules; appellee has not shown that appellant's statement in the article that it uses the modules equates to a release of information, documents, or records. Appellee also has not shown that it was appellant's "copy" of the Relias obstetric hemorrhage modules that was used during "multiple depositions." Our review of the record shows that appellee was relying on his copy of the modules Relias sent pursuant to subpoena.

{¶ 34} We also do not find that appellant waives its privilege because *appellee* filed *its* copy of the Relias obstetric hemorrhage modules with the trial court. Even if appellant had filed a copy of the Relias obstetric hemorrhage modules, "such a broad concept of waiver would negate the purpose of the peer review

confidentiality statute." *Lowrey v. Fairfield Med. Ctr.*, 5th Dist. Fairfield No. 08 CA 85, 2009-Ohio-4470, ¶ 40, citing *Atkins v. Walker*, 3 Ohio App.3d 427, 445 N.E.2d 1132 (6th Dist.1981).

{¶ 35} Finally, appellee was in possession of the Relias obstetric hemorrhage modules pursuant to subpoena from the original source, Relias. On November 17, 2021, appellee filed his motion to compel appellant to disclose its copy of the modules. Appellant moved for a protective order on November 29, 2021[1] and appellee has not argued that appellant's motion was filed outside discovery deadlines imposed by the court. Therefore, appellant's motion was timely filed.

{¶ 36} Accordingly, we conclude that the Relias obstetric hemorrhage modules are protected by the peer review privilege as outlined in R.C. 2305.252. Having concluded that the peer review privilege of R.C. 2305.252 applies to the instant case, we reverse the trial court's rulings granting appellee's motion to compel and denying appellant's motion for protective order.

{¶ 37} The sole assignment of error is sustained.

{¶ 38} Judgment reversed and case remanded.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the common pleas court to carry this judgment into execution.

---

[1] On November 23, 2021, the trial court granted UH's motion to continue the trial date and trial was set for March 28, 2022; appellee has not argued that appellant's motion for a protective order was filed outside the discovery deadline.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
CORNELIUS J. O'SULLIVAN, JR., JUDGE

EILEEN A. GALLAGHER, J., CONCURS;
FRANK DANIEL CELEBREZZE, III, P.J., DISSENTS

FRANK DANIEL CELEBREZZE, III, P.J., DISSENTING:

{¶ 39} I respectfully dissent from the majority. Specifically, I would have found that appellant did not meet its burden in establishing that the Relias obstetric hemorrhage modules were protected by the peer review privilege pursuant to R.C. 2305.252.

{¶ 40} I fully agree with the majority's recitation of the standard of review. Whether discovery is confidential and privileged "is a question of law that is reviewed de novo." *Hance v. Cleveland Clinic*, 2021-Ohio-1493, 172 N.E.3d 478, ¶ 16 (8th Dist.). The peer review privilege is "strictly construed against the party seeking to assert it." *Smith v. Cleveland Clinic*, 197 Ohio App.3d 524, 2011-Ohio-6648, 968 N.E.2d 41, ¶ 15 (8th Dist.). Further, "[i]f all materials viewed and utilized by review committees were deemed undiscoverable, a hospital could never be held accountable for any negligent act within the purview of the committee." *Huntsman v. Aultman Hosp.*, 5th Dist. Stark No. 2006 CA 00331, 2008-Ohio-2554, ¶ 47.

{¶ 41} As the majority correctly stated, to invoke the peer review privilege, appellant had the burden to (1) "establish the existence of a committee that meets

that statutory definition of 'peer review committee' contained in R.C. 2305.25(E)" and (2) demonstrate that the documents under which the privilege is claimed constitute a "record within the scope of a peer review committee." *Smith* at ¶ 15.

{¶ 42} In support of both prongs, appellant introduced an affidavit authored by Nancy Cossler, M.D. ("Dr. Cossler"), Chief of Systems Quality for Obstetrics at University Hospitals and Vice Chair for Quality and Patient Safety for University Hospitals MacDonald Women's Hospital. Appellant exclusively relies on the contents of this affidavit in asserting that the peer review privilege applies to the learning modules.

{¶ 43} In Dr. Cossler's affidavit, she avers that

4. University Hospitals has a quality-assurance committee which meets as needed and as part of its regular business activities, and conducts quality-review activities involving the quality of care provided by its various care providers.

5. University Hospitals quality-assurance committee is a quality-assurance committee as statutorily defined by R.C. 2305.25(E).

{¶ 44} I would hold that Dr. Cossler's affidavit was insufficient from an evidentiary perspective. This court has previously recognized that "Ohio courts have been adamant that merely labelling a committee or document 'peer review' is insufficient to meet the burden of proving that the privilege applies to the requested information." *Smith* at ¶ 23. Dr. Cossler's affidavit does exactly this. Regarding the first prong, Dr. Cossler merely asserts the existence of a peer review committee and states that the committee meets the statutory definition. This is conclusory and further, because it was authored by an employee of appellant, it is also self-serving.

{¶ 45} In *Smith,* this court suggested that appellants could have introduced the peer review committee's "written policies and procedures, * * * its members, its scope of authority or any other proof that the proceedings were aimed at quality of care or disciplinary issues." *Id.* at ¶ 17. None of that possibly supportive evidence was introduced here, either. In the instant matter, appellant relies solely on Dr. Cossler's affidavit and fails to include any independent evidence establishing the existence of a peer review committee.

{¶ 46} Likewise, the same analysis is applicable to the second prong. Dr. Cossler's affidavit is the only evidence offered to support that the learning modules were within the scope of a peer review committee. Relating to this prong, the affidavit avers:

> 8. The Relias learning/training modules are used solely as a tool by University Hospitals' quality assurance committee to provide feedback on an individual clinician * * *

> 11. The Relias training modules are, therefore, not discoverable in this case and are not admissible in evidence at trial as they are privileged pursuant to R.C. 2305.25, 2305.253, and 2305.24.

{¶ 47} These averments merely label the modules as "quality assurance" tools, which is insufficient to establish that the modules were indeed within the scope of the peer review committee. This is especially so when considering additional evidence in the record that the modules were used for training and administered during new-hire orientations.

{¶ 48} Given the above, I would have found that appellant did not meet the evidentiary burden necessary to establish that the peer review privilege applies. I therefore respectfully dissent.