[Cite as *Holland v. Dayton Children's Hosp.*, 2026-Ohio-1678.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| CHELSEY HOLLAND, INDIVIDUALLY AND AS MOTHER, NATURAL GUARDIAN, AND NEXT FRIEND OF A.T., A MINOR | : : : : | C.A. No. 30516 |
| | : | Trial Court Case No. 2021 CV 02301 |
| Appellee/Cross-Appellant | : : | (Civil Appeal from Common Pleas Court) |
| v. | : : | |
| DAYTON CHILDREN'S HOSPITAL | : : | **FINAL JUDGMENT ENTRY & OPINION** |
| Appellant/Cross-Appellee | : | |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on May 8, 2026, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with the opinion.

Costs to be paid as follows: 50% by appellee and 50% by appellant.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.


For the court,


_____
RONALD C. LEWIS, PRESIDING JUDGE

TUCKER, J., and EPLEY, J., concur.

**OPINION**

BRIANNA M. PRISLIPSY, SUSAN BLASIK-MILLER, and MEREDITH C. TURNER-WOOLLEY, Attorneys for Appellant
SAM G. CARAS and DAVID M. DEUTSCH, Attorneys for Appellee

LEWIS, J.

{¶ 1} Defendant-appellant Dayton Children's Hospital ("Dayton Children's") appeals from an order of the Montgomery County Common Pleas Court that required Dayton Children's to produce two emails in discovery. For the following reasons, we reverse the judgment of the trial court in part and affirm it in part and remand the cause for further proceedings consistent with this opinion.

## I.  Facts and Course of Proceedings

{¶ 2} On June 8, 2021, Chelsey Holland, individually and as the mother, natural guardian, and next friend of A.T., a minor, commenced a medical negligence action against Dayton Children's alleging injuries that resulted from an attempt to insert a nasogastric feeding tube into A.T. when she was an infant. Following Dayton Children's motion for a more definite statement, Holland filed an amended complaint. Holland alleged claims of medical negligence and breach of fiduciary duties that occurred on or about January 19, 2015. According to Holland's amended complaint, Dayton Children's conduct, through its employees, directly and proximately caused Holland "to incur necessary medical care in a reasonable sum exceeding $363,165.00, and to incur reasonable charges for future medical care in a reasonable sum likely to exceed $126,000.00." Amended Complaint, ¶ 8. Dayton Children's filed its answer, and the parties filed their initial disclosures.

{¶ 3} Discovery proceeded with the exchange of interrogatories and document requests and the taking of depositions. On November 16, 2023, Holland filed a motion for

sanctions due to spoliation of evidence.   According to Holland's motion, Dayton Children's had failed to fulfill its obligation to maintain and preserve electronic data in its CorTrak equipment relevant to the medical treatment of A.T. when it anticipated litigation as early as nine days following the negligent treatment of A.T.   On page 4 of her motion, Holland explained how her counsel discovered the alleged spoliation of critical evidence:

> After our conference with the Court, and long after the time for responses to Plaintiff's request for production, Plaintiff's counsel discovered that a document had been inserted in the list of documents produced, which had never been identified before, and the related statement required by Civ. R. 34, was never served on Plaintiff's counsel.   On further investigation, Plaintiff's counsel discovered these document numbers were for an email from nurse Reeder to nurse Stamm, and a return email from nurse Stamm to nurse Reeder.   When Plaintiffs' counsel sought to secure those emails, Defendant produced PRIVILEGE LOG OF DEFENDANT, DAYTON CHILDRENS HOSPITAL, copy attached, and identified as Plaintiff's Exhibit 40.   The privilege log confirms that as early as January 28, 2015, Defendant Dayton Childrens was anticipating litigation, thus claiming that the email exchange was in fact created in anticipation of litigation.

{¶ 4} On February 6, 2024, the trial court ordered Dayton Children's to produce to the court for in camera review two emails from January 28, 2015 and February 3, 2015, which are documents identified in a privilege log submitted by Dayton Children's.   In its privilege log, Dayton Children's stated the following in support of its refusal to produce the two emails: "Protected by peer review privilege, quality assurance privilege, self-critical analysis privilege, attorney-client privilege and created in anticipation of litigation."

3

**{¶ 5}** Dayton Children's filed a bench brief relating to whether the January 28, 2015 and February 3, 2015 emails were privileged. Dayton Children's argued that the two emails were privileged under both the peer-review privilege in R.C. 2305.252(A) and the work-product doctrine. According to Dayton Children's, the two emails were solicited by a nurse, Karen Reeder (f.k.a. Karen Federici), "as part of a quality improvement process, which she then intended to forward on to Susan Childs, the Director of Risk Management at the Hospital in 2015." Bench Brief, p. 3. Dayton Children's submitted affidavits from Reeder and Childs in support of its bench brief.

**{¶ 6}** On August 9, 2024, the trial court overruled several motions, including Holland's motion for sanctions due to spoliation of evidence. On October 14, 2024, Holland filed a second motion for sanctions due to Dayton Children's spoliation of evidence. On March 7, 2025, Holland filed a supplement to her second motion for sanctions.

**{¶ 7}** On May 27, 2025, the trial court overruled Holland's second motion for sanctions and ordered Dayton Children's to produce the January 28, 2015 and February 3, 2015 emails. The court found that Dayton Children's had failed to meet its burden to establish that the peer-review privilege or the work-product doctrine applied to the two emails.

**{¶ 8}** Dayton Children's filed a timely notice of appeal from the trial court's May 27, 2025 order requiring the production of the two emails. Holland filed a timely notice of cross-appeal insofar as the trial court's May 27, 2025 order overruled her October 14, 2024 and March 7, 2025 motions for sanctions. We issued an order for Holland to show cause why the scope of this appeal should not be narrowed to the trial court's order requiring the production of documents because the trial court's order denying sanctions is not a final appealable order. On July 18, 2025, we concluded that our order to show cause was not

4

satisfied. Holland filed a motion for reconsideration, which we denied. The parties then filed their respective appellate briefs.

## II. Assignment of Error

{¶ 9} Dayton Children's sole assignment of error states:

The trial court erred when it ordered the production of Defendant's privileged communications.

### a. Appellate Standard of Review

{¶ 10} This appeal involves the applicability of the peer-review privilege and the work-product doctrine to two emails that Dayton Children's refused to produce to Holland. "Generally, a discovery dispute is reviewed for abuse of discretion. . . . However, whether the information sought in discovery is confidential and privileged 'is a question of law that is reviewed de novo.'" *Hance v. Cleveland Clinic*, 2021-Ohio-1493, ¶ 16 (8th Dist.), quoting *Med. Mut. of Ohio v. Schlotterer*, 2009-Ohio-2496, ¶ 13. Therefore, we apply a de novo review to determine whether the trial court erred in concluding that the January 28, 2015 and February 3, 2015 emails were not covered by the peer-review privilege.

{¶ 11} Our review of the applicability of the work-product doctrine is different. "'In Ohio, protection for an attorney's work product is codified in Civ.R. 26, which notably recognizes work product as separate from privileged matters.'" *Haile v. Detmer Sons Inc.*, 2022-Ohio-2891, ¶ 12 (2d Dist.), quoting *Burnham v. Cleveland Clinic*, 2016-Ohio-8000, ¶ 18. Consequently, we review the trial court's ruling relating to the applicability of the work-product doctrine "under the abuse of discretion standard reserved for general discovery disputes rather than the de novo standard applied to disputes over privileged matters." *Id.* "'A trial court abuses its discretion when it acts in an unreasonable, arbitrary or

5

unconscionable manner.'"  *North v. Eichler*, 2026-Ohio-857, ¶ 14 (2d Dist.), quoting *State v. Finnerty*, 45 Ohio St.3d 104, 107 (1989).

### b.  The Peer-Review Privilege

**{¶ 12}** The peer-review privilege applies to "[p]roceedings and records within the scope of a peer review committee of a health care entity."  R.C. 2305.252(A).  A "peer review committee" is defined as:

> a utilization review committee, quality assessment committee, performance improvement committee, tissue committee, credentialing committee, or other committee that does either of the following:
>
> (a) Conducts professional credentialing or quality review activities involving the competence of, professional conduct of, or quality of care provided by health care providers, including both individuals who provide health care and entities that provide health care;
>
> (b) Conducts any other attendant hearing process initiated as a result of a peer review committee's recommendations or actions.

R.C. 2305.25(E)(1).

**{¶ 13}** "A peer-review committee can take a number of forms beyond the straightforward 'peer review committee of a hospital.'"  *Stull v. Summa Heath Sys.*, 2024-Ohio-5718, ¶ 17, quoting R.C. 2305.25(E)(2)(a).  "For example, a peer-review committee can also be '[a] board or committee of a hospital . . . when reviewing professional qualifications or activities of health care providers, including both individuals who provide health care and entities that provide health care.'"  *Id.*, quoting R.C. 2305.25(E)(2)(c).

**{¶ 14}** "The type of information protected by the peer-review privilege is outlined in R.C. 2305.252."  *Id.* at ¶ 18.  "The peer-review-privilege statute prohibits, among other

6

things, the disclosure of information 'produced or presented during the proceedings of the peer review committee.'" *Id.*, quoting R.C. 2305.252(A). "The statute also prohibits the disclosure of any information or testimony provided to a peer-review committee by any 'individual who testifies before a peer review committee, serves as a representative of a peer review committee, serves as a member of a peer review committee, works for or on behalf of a peer review committee, or provides information to a peer review committee.'" *Id.*, quoting R.C. 2305.252(A).

{¶ 15} "The peer-review privilege does not necessarily expand to everything a peer-review committee touches." *Id.* at ¶ 20. "The fact that an individual has participated in or provided information to a peer-review committee does not prevent that individual from 'testifying as to matters within the individual's knowledge.'" *Id.*, quoting R.C. 2305.252(A). "'Information, documents, or records otherwise available from original sources' do not become privileged 'merely because they were produced or presented during proceedings of a peer review committee.'" *Id.*, quoting R.C. 2305.252(A). "However, such 'information, documents, or records are available only from the original sources and cannot be obtained from the peer review committee's proceedings or records.'" *Id.*, quoting R.C. 2305.252(A).

{¶ 16} "The party resisting discovery under a claim of peer review privilege has a two-part burden of establishing that the privilege applies to the requested information." *Cousino v. Mercy St. Vincent Med. Ctr.*, 2018-Ohio-1550, ¶ 16 (6th Dist.), citing *Smith v. Cleveland Clinic*, 2011-Ohio-6648, ¶ 9 (8th Dist.), and *Bansal v. Mt. Carmel Health Sys.*, 2009-Ohio-6845, ¶ 14 (10th Dist.). "First, the health care entity must establish the existence of a 'peer review committee' as defined by R.C. 2305.25(E)." *Id.*, citing *Bansal* at ¶ 15 and *Smith* at ¶ 15. "Second, the health care entity must prove that each of the documents that it refuses to produce is a 'record within the scope of [that] peer review committee' as required by

7

R.C. 2305.252." *Id.*, citing *Bansal* at ¶ 15. "The health care entity must provide evidence as to the specific documents requested, not generalities regarding the types of documents usually contained in a peer review committee's records." *Bansal* at ¶ 15. "Absent evidence that the requested documents were created by and/or exclusively for a peer review committee, or generated by an original source and produced or presented to a peer review committee, the party asserting the R.C. 2305.252 privilege has not met its burden." *Id.* at ¶ 18. "At 'a bare minimum, the party claiming the privilege must bring to the court's attention the existence of such a [peer-review] committee and show the committee investigated the case in question.'" *Manley v. Heather Hill, Inc.*, 2007-Ohio-6944, ¶ 22 (11th Dist.), quoting *Smith v. Manor Care of Canton, Inc.*, 2006-Ohio-1182, ¶ 61 (5th Dist.).

**{¶ 17}** The trial court found that Dayton Children's "[had] established the first prong of its burden to show the Privilege applies because Ms. Reeder's affidavit is sufficient to establish that a peer review committee within the meaning of the statute existed and that it reviewed the care at issue." Decision (May 27, 2025), p. 7, citing Reeder Affidavit, ¶ 2-4, 8. But the court found that Dayton Children's Hospital failed to satisfy the second prong of its burden because it did not submit proof that the two emails are records within the legitimate scope of the peer review committee. The trial court explained:

> Concerning the first email, the Affidavits do not even claim that the first email from Ms. Reeder was produced to the committee. Therefore, the Privilege only applies if it fits into the first category of records (i.e. was generated by or exclusively for the peer review committee). While Ms. Reeder's affidavit avers that she is a member of the PICU quality improvement committee and any correspondence with Nurse Stamm was in that capacity and was within the scope of the PICU committee's work, these bare assertions

8

do not demonstrate that the email was generated by or exclusively for the committee. Indeed, the email does not mention the committee or anything specifically related to it. And Ms. Reeder's affidavit does not provide specifics about the email in question, merely generalizations concerning "any correspondence."

Neither does the second email by Nurse Stamm fit into either category of peer review documents because neither affidavit avers it was produced/presented to the committee nor indicates it was generated exclusively for or by the committee, and thus does not qualify as an incident report.

Thus, the Court finds that Defendants have failed to meet their burden to establish that the Privilege applies to the emails.

*Id.* at 8.

{¶ 18} Dayton Children's argues that the trial court properly found that it had successfully demonstrated two of the three requirements for establishing the peer-review privilege by showing that a peer-review committee existed and that Reeder and Childs were members of it. Dayton Children's contends that "the trial court erred as a matter of law when it found that Nurse Reeder's quality improvement communications were not privileged, and it erred when it declined to undertake a further inquiry into the nature of those documents." Appellant's Brief, p.10-11.

{¶ 19} Holland contends that the trial court erred by concluding that Reeder was a member of a quality improvement committee protected by R.C. 2305.252 or 2305.25. According to Holland, Dayton Children's "failed to meet its burden to prove that any such committee actually existed, or was involved in privileged communications." Appellee's

9

Brief, p. 13. However, Holland agrees with the trial court's finding that Dayton Children's failed to prove that the emails at issue were made for and submitted to a quality assurance or peer-review committee as defined by statute. *Id.*

{¶ 20} Dayton Children's relied primarily on the affidavit and deposition of Karen Reeder, a nurse, to support its position that the January 28, 2015 and February 3, 2015 emails were covered by the peer-review privilege. At her March 28, 2023 deposition, Reeder testified that she played a role in quality assurance and quality improvement at Dayton Children's Hospital. She explained:

Q. Okay. Now, I understand that you have a role in peer review or quality assurance; is that correct?

A. Not peer review. That's a physician. But quality improvement and quality assurance, yes.

Q. All right. And what's your position?

A. I am a clinical nurse specialist.

Q. Okay. Is there a quality assurance committee that you are a member of?

A. Yes.

Q. Okay. And how long have you been in that position?

A. For 11 years.

Q. All right. That covers us.

A. There's more than one QI committee.

Q. Okay. Tell me.

10

A. So our PICU has a PICU-specific one and then there's also a hospital QA and I'm not involved with the hospital QA. I'm involved with local PICU QI, quality improvement.

Q. Okay. It's pediatric ICU?

A. Yes.

March 28, 2023 Tr. 9-10. When asked later in her deposition about her position, the following exchange occurred:

Q. Well, wait a minute. You are in quality assurance, right? Correct?

A. I do PICU QI. Quality assurance is hospital level, so --

Q. Well, it is a yes or a no that, what you do in PICU, is quality assurance?

A. We call it quality improvement.

Q. Okay. So it's not part of a quality assurance committee?

A. No.

Q. Okay. But the same idea is behind what you do and that is, you want to advance patient care. So in reviewing instances of prior case you can use those as stepping stones to make care better, right?

A. Yes.

*Id.* at 157-158.

{¶ 21} Dayton Children's cited Reeder's deposition in its bench brief filed with the trial court. Dayton Children's also submitted the February 14, 2024 affidavit of Reeder in support of its bench brief. Reeder's affidavit stated, in pertinent part:

11

2. The PICU quality improvement committee was created with the goal of improving healthcare, reduce adverse outcomes, and reducing risk associated with care and treatment rendered at Dayton Children's Hospital.

3. The PICU quality improvement committee reviews care rendered in the PICU at Dayton Children's Hospital.

4. These reviews are part of the PICU quality improvement's deliberative process in identifying opportunities to improve the quality of care and safety to patients within the PICU.

5. While not all cases reviewed will ultimately be subject to a full review by the committee, these partial, preliminary reviews are an integral part of the risk assessment and quality assurance process.

6. Further, the Risk Management department at Dayton Children's Hospital is responsible for gathering information regarding any patient care or incidents where there is a prospect of litigation.

7. I am a twelve-year member of the PICU quality improvement committee. During the care at issue in 2015, my former colleague, Susan Childs, was the Director of Risk Management at Dayton Children's Hospital and worked in conjunction with outside legal counsel for Dayton Children's on anticipated litigation, active litigation, and other legal matters.

8. I do not specifically remember my communication with Nurse Stamm regarding [A.T.] However, any communication with Nurse Michelle Stamm regarding the care and treatment rendered to [A.T.] was for this purpose and in my capacity as a member of the PICU quality improvement committee.

12

9. Prior to this communication, I likely reviewed Nurse Stamm's notes in [A.T.]'s medical record.

10. The review of [A.T.]'s care by the PICU quality improvement committee is privileged and confidential pursuant to R.C. 2305.24 and 2305.252 quality assurance review/peer review privileges.

11. The statement I obtained, pursuant to course and routine, would have been provided to Ms. Childs for quality assurance purposes and in anticipation of potential future litigation.

12. Any correspondence between me and Nurse Stamm regarding her treatment of [A.T.] was within the scope of the PICU quality improvement committee's work and was done in anticipation of potential future litigation.

{¶ 22} Based on our review of the evidence that was before the trial court, we agree with the trial court that Reeder failed to state that the two emails were produced to the committee or were generated by or exclusively for the peer review committee. Reeder stated in her affidavit that she did not remember her communication with Stamm regarding Stamm's treatment of A.T. Yet Reeder then stated that any communication she had with Stamm regarding A.T. must have been for "this purpose." It is unclear what Reeder meant by "this purpose" in paragraph eight of her affidavit since the word "purpose" was not used in the first seven paragraphs of her affidavit. Reeder also stated in her affidavit that the email she obtained from Stamm would have been provided to Childs for quality assurance purposes. However, Childs did not state anywhere in her affidavit that she was part of a quality improvement or quality assurance committee or that she was in charge of gathering documents for such a committee.

{¶ 23} We have reviewed the January 28, 2015 and February 3, 2015 emails at issue in this appeal. Without getting into the substance of the two emails, which the trial court filed under seal for judicial access only, we agree with the trial court's observation that there is no mention of any quality assurance or quality improvement committee in either email. Also, although Reeder mentioned Childs in the January 28, 2015 email, Dayton Children's did not establish a direct connection between Childs and a quality improvement or quality assurance committee that investigated Stamm's treatment of A.T.

{¶ 24} We also agree with Holland that Dayton Children's should have done a much better job of establishing that a peer-review committee existed and that the two emails at issue fell within the province of that committee. Reeder's deposition testimony was somewhat confusing when she referred to a pediatric quality improvement committee, of which she was a member, and a hospital-wide quality assurance committee, of which she was not a member. It does not appear that any evidence was provided to the trial court to corroborate Reeder's general statements that these committees existed. As noted by the trial court, nothing in the January 28, 2015 and February 3, 2015 emails refers to a quality improvement or quality assurance committee. Assuming both that a quality assurance or quality improvement committee existed at Dayton Children's in January 2015 and that these emails were generated for such a committee, one would expect the record to include a written policy describing such a committee and some contemporary evidence that these two emails were generated for the committee, which then investigated the treatment provided by Stamm.

{¶ 25} In summary, we agree with the trial court that Dayton Children's failed to meet its burden of showing that the peer-review privilege applies to the January 28, 2015 and February 3, 2015 emails. But that does not end our analysis given the recent Supreme

14

Court of Ohio decision in *Stull*, 2024-Ohio-5718. There, the Ohio Supreme Court was faced with a discovery dispute about a hospital's file that contained documents about a resident physician. One side claimed that the file was protected from discovery based on an affidavit stating that the file was used and maintained exclusively by multiple peer-review committees. The other side claimed that the file was not protected by the peer-review privilege "because the affidavit contained ambiguities and did not adequately establish that the file was entirely within the scope of peer review." *Id.* at ¶ 1.

{¶ 26} The Supreme Court noted that the lower courts did not find that the affidavit described a process that did not constitute peer review as a matter of law. Rather, the lower courts "held that the peer-review privilege *might* apply to some or all of the residency file, but various ambiguities in Dr. Laipply's affidavit left the courts uncertain about whether the file was protected by the peer-review privilege as a matter of law." (Emphasis in original.) *Id.* at ¶ 14. The Court then provided the following guidance that is relevant to the current appeal:

> We disagree with the Stulls that the trial court had no choice but to determine whether the peer-review privilege applied solely by reviewing Dr. Laipply's affidavit and that disclosure was required because of the deficiencies in the affidavit. The mere fact that affidavit testimony falls short of conclusively establishing that a file is within the scope of the peer-review privilege does not require the conclusion that the file is unprivileged, nor does it justify a blanket order to disclose the entire contents of the file. The trial court had the power to take a more active role and control the discovery process related to the peer-review privilege, and that power was not limited by

15

the substantive law governing the peer-review privilege or by the standard set

forth in *Bansal*, 2009-Ohio-6845 (10th Dist.).

*Id.* at ¶ 15.

{¶ 27} The Supreme Court concluded that "the trial court erroneously limited its own power to control the discovery process and that it should conduct further inquiry, including but not limited to in camera review, to determine whether Dr. Elashi's residency file is protected by the peer-review privilege." *Id.* at ¶ 33. The Court reversed the judgment and remanded the cause to the trial court "to conduct an in camera review of the residency file and any other appropriate factual inquiry necessary to resolve the legal question of whether the file is privileged." *Id.*

{¶ 28} We believe a similar remand is warranted here. The affidavit of Reeder and her deposition testimony is some evidence that a pediatric quality improvement committee and a hospital-wide quality assurance committee existed at Dayton Children's in January 2015. And at least some evidence was provided through Reeder's affidavit that the January 28, 2015 and February 3, 2015 emails *may* have been generated for a quality improvement committee at Dayton Children's. But there are several ambiguities and conclusory statements in Reeder's affidavit. As a reminder, while the peer-review privilege should be strictly construed, it is also important to apply the privilege where the facts warrant its application. There are too many unanswered questions at this point to determine as a matter of law whether the peer-review privilege applies to the January 28, 2015 and February 3, 2015 emails.

{¶ 29} Based on the facts in this case and the holding in *Stull*, we believe this cause is one that should be remanded to the trial court to make any other appropriate factual inquiry necessary to resolve the legal question of whether the two emails are protected from

16

discovery by the peer-review privilege. Therefore, we sustain Dayton Children's assignment of error in part.

### c. Work-Product Doctrine

**{¶ 30}** The work-product doctrine provides a qualified privilege generally protecting from disclosure the "files and mental processes of lawyers" made in anticipation of litigation. *Hickman v. Taylor*, 329 U.S. 495, 514 (1947). "Its purpose is '(1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts.'" *Eddy v. Farmers Property Cas. Ins. Co.*, Slip Opinion No. 2026-Ohio-626, ¶ 33, quoting Civ.R. 26(A). In short, "[t]he work product doctrine precludes discovery of the mental impressions, conclusions, opinions, strategies, and legal theories, both tangible and intangible, generated or commissioned by counsel in anticipation of litigation or preparation for trial." *Haile*, 2022-Ohio-2891, at ¶ 12 (2d Dist.), citing *Squire, Sanders & Dempsey, L.L.P. v. Givaudan Flavors Corp.*, 2010-Ohio-4469, ¶ 56-60.

**{¶ 31}** Dayton Children's submitted an affidavit of Childs and an affidavit of Reeder in support of its bench brief to the trial court. We previously quoted the pertinent paragraphs of Reeder's affidavit. The February 14, 2024 affidavit of Childs stated, in pertinent part:

2. In 2015, at the time of the care and treatment of [A.T.], I was the Director of Risk Management for Dayton Children's.

3. As Director of Risk Management, I was responsible for gathering information and documentation pertaining to hospital events which may be the subject of future litigation.

17

4. In 2015, Dayton Children's did not have in-house General Counsel. Therefore, I worked in conjunction with outside legal counsel for Dayton Children's on anticipated litigation, active litigation, and other legal matters.

**{¶ 32}** The trial court found that neither the affidavit of Reeder nor the affidavit of Childs "supports Children's bare assertion that the emails were prepared in anticipation of litigation. Nor do the affidavits attest that the emails were prepared at the direction of, for, or transmitted to legal counsel." Decision (May 27, 2025), p. 10. The trial court further noted, "Indeed, the emails themselves, created by non-attorneys, **do not state** that they were prepared at the direction of legal counsel, prepared for an attorney, or transmitted to an attorney." (Emphasis in original.) *Id.* Therefore, the trial court found that Children's Hospital had failed to meet its burden to establish that the work-product doctrine applied to the two emails.

**{¶ 33}** Dayton Children's argues that the trial court erred in finding the work-product doctrine did not apply. According to Dayton Children's, "as Ms. Childs, the Director of Risk Management, stated in her affidavit, [Dayton Children's] did not have in-house General Counsel at the time. . . . As such, Ms. Childs, as Director of Risk Management, was responsible for coordinating efforts with outside counsel for all litigation matters, anticipated or otherwise." Appellant's Brief, p. 13. Therefore, Dayton Children's contends that Reeder's investigation was done for the benefit of Ms. Childs to assist her in coordinating with outside counsel in anticipation of litigation.

**{¶ 34}** Interestingly, Holland agrees with Dayton Children's that the trial court erred in finding that Children's Hospital did not anticipate litigation at the time the January 28, 2015 and February 3, 2015 emails were drafted. According to Holland, the trial court also erred by requiring Dayton Children's to show that litigation was imminent at the time the emails

18

were drafted and by focusing on whether the content of the emails mentioned the work product doctrine or that they were intended for attorney review. Nevertheless, Holland urges us to affirm the trial court's finding that the emails are not covered by the work-product doctrine because Dayton Children's did not prove the emails "were produced for attorney review."

{¶ 35} Our review of the January 28, 2015 and February 3, 2015 emails reveals that neither email contains mental impressions, conclusions, opinions, strategies, and legal theories, both tangible and intangible, generated or commissioned by counsel. Moreover, there is no evidence in the record that the two emails at issue in this appeal were prepared by an attorney or at the direction of an attorney or that the emails were transmitted to an attorney. Rather, Dayton Children's established, at most, that a non-attorney (Childs) was responsible in 2015 for gathering information and documentation pertaining to hospital events that could potentially be the subject of future litigation. But Childs's affidavit fails to state that she gathered the two emails at issue in this appeal at the behest of outside counsel or that she or outside counsel, at the time the emails were gathered, anticipated litigation relating to A.T.'s treatment. Indeed, neither Childs nor Reeder identified the names of any outside counsel or a date on which any request by outside counsel may have been made. Instead, Reeder's affidavit made two conclusory statements to the effect that any statement she obtained from Stamm would have been provided to Childs in anticipation of potential future litigation. Reeder Affidavit, ¶ 11-12. But Reeder did not provide factual support for these conclusory statements, and her statements did not establish that any attorney directed Childs or Reeder to create the two emails. As a matter of law, the affidavits of Reeder and Childs are insufficient to establish that the two emails are covered by the work-product doctrine.

{¶ 36} Before concluding this opinion, we must note that Holland's arguments and cross-appeal related to the work-product doctrine are confusing. Holland wants us to hold that the trial court was wrong when it found that Dayton Children's had failed to show that the two emails were created in anticipation of litigation. That position weighs in favor of applying the work-product doctrine to the two emails at issue in this appeal, which would prevent Holland from seeing the two emails. Yet, Holland then asks us to affirm the trial court's conclusion that the two emails at issue in this appeal are not protected by the work-product doctrine. Presumably, Holland wants us to make a definitive holding that the emails were created in anticipation of litigation to help her future chances of winning a spoliation argument either at the trial court or appellate levels. But as we explained in our order to show cause, the appeal before us does not include the portion of the trial court's May 27, 2025 order denying Holland's motion for sanctions due to spoliation of evidence. Therefore, we decline to determine in this appeal whether Dayton Children's anticipated litigation in January 2015 immediately after A.T.'s treatment. Rather, it is sufficient for purposes of this appeal to conclude that the trial court did not abuse its discretion by finding Dayton Children's failed to establish that the January 28, 2015 and February 3, 2015 emails are protected by the work-product doctrine.

{¶ 37} Dayton Children's assignment of error is sustained in part and overruled in part.

III.    Conclusion

{¶ 38} Having sustained Dayton Children's assignment of error in part, we reverse the judgment of the trial court to the extent that it found the January 28, 2015 and February 3, 2015 emails are not covered by the peer-review privilege. We remand the cause to the trial court to conduct any other appropriate factual inquiry necessary to resolve the legal

20

question of whether the January 28, 2015 and February 3, 2015 emails are protected by the peer-review privilege. The judgment is affirmed to the extent the trial court found that Dayton Children's failed to establish the January 28, 2015 and February 3, 2015 emails are protected from disclosure by the work-product doctrine.

. . . . . . . . . . . . .

TUCKER, J., and EPLEY, J., concur.

21